## CUNYA *v.* VANCE ET AL.

[No. 15,521.   Filed October 18, 1935.]

*Harry Taylor,* and *Arthur F. Scheer,* for appellant.

*M. C. Borders, Slaymaker, Merrell & Locke,* and *James V. Donadio,* for appellees.

WOOD, J.—Appellant filed a claim with the Industrial Board for adjustment of compensation for injuries alleged to have resulted from an accident sustained by

him arising out of and in the course of his employment by the appellees. From an award allowing him compensation for the period of one and one-seventh weeks for temporary total disability, the appellant appeals, assigning as error for reversal that the award of the full Industrial Board is contrary to law.

The full Industrial Board found as facts:

"That on January 28, 1935, plaintiff filed his application for the adjustment of a claim for compensation, alleging that infection in the left eye necessitated removal of same and thereby caused complete loss of the sight of said eye and also a bodily disfigurement due to said removal.

"It is further found that on September 25, 1934, plaintiff was in the employ of the defendant at an average weekly wage of $25.42; that on said day plaintiff received personal injuries by reason of an accident arising out of and in the course of his employment of which the defendants had knowledge and furnished medical, surgical, hospital and nurse's services.

"It is further found that as a result of said accidental injury plaintiff was totally disabled beginning on October 1, 1934, and continuing to the 16th day of October, 1934, when he returned to work.

"It is further found that as the result of said accidental injury plaintiff lost by enucleation, the left eye ball.

"It is further found that prior to plaintiff's accidental injury on September 5, 1934, plaintiff was Industrially blind in his left eye.

"It is further found that the record is silent as to the degree of disfigurement if any plaintiff has suffered as the result of the accidental injury of September 25, 1934."

Upon this finding of facts the full board awarded appellant compensation at the rate of $13.98 per week for one and one-seventh weeks beginning October 7, 1934.

The evidence is not in sharp conflict except upon the ability of appellant to see with his left eye previous to the accidental injury.

It was stipulated that on September 25, 1934, the appellant received an injury by accident arising out of and in the course of his employment which resulted in the enucleation of his left eye; that the appellee had proper notice, and furnished appellant necessary medical and surgical services and a glass eye; that his average weekly wage was $25.42; that the injury resulted in temporary total disability beginning on October 1, and ceased October 16, 1934.

The record discloses the further uncontroverted facts, that after the injury Dr. Hilbert, the appellee company's physician sent the appellant to Dr. Savery, an eye specialist, for treatment, who made an X-ray examination of appellant's eye and found "an intraocular foreign body near the posterior part of the eye ball, that is within the globe." It was necessary to remove the eye ball. After its removal Dr. Savery sent it to the Army Medical Museum in Washington, D. C., for examination and a pathological report by that institution. November 28, 1934, the Army Medical Museum made a report to Dr. Savery. This report showed that on gross examination of the eye ball the wound of entrance was not clearly visible, but an X-ray examination demonstrated a foreign body in the vitreous posteriorly. On opening the eye ball the vitreous appeared cloudy and a flat hard foreign body two by one millimeters in size was found embedded in it posteriorly, it was magnetizable and resembled a piece of steel. A microscopical examination of the eye ball revealed an oblique partially healed wound through the cornea anterior to the limbus which extends through the root of the iris and the ciliary body. It was a penetrating wound of the eye ball. The character of the inflammatory process which was found to exist indicated that it was of short duration of probably not more than ten days. Dr. Savery testified that from

the examination which he made of appellant's eye he was not able to tell whether the sight was defective or not previous to the injury; that according to the report from the Army Medical Museum, there was no organic trouble, but that it was of an acute nature. The appellant had been in the continuous employ of the Studebaker Corporation and appellees for a period of ten years previous to the accident. He was transferred from one department to another in 1929.

The appellant testified that previous to the accident causing the injury he was engaged in building some kind of special moulds; that previous to the injury he had never had any trouble with his left eye; that he could see with that eye as well as he could with his right eye; that he had never had any injury to or operation on his left eye, and had never been to a doctor for the left eye previous to the accident; and that he never wore glasses. Other witnesses who worked in the same room and near appellant testified that previous to the loss of his left eye, they had never noticed that appellant could not see out of that eye; that since the loss of that eye they had noticed that he could not see people or objects on his left side and in order to do so had to turn his head in that direction; that he would bump into people or objects when approaching them on his left side. Since the loss of his eye appellant has been transferred to another kind of work because of his defective vision. Dr. Hilbert testified that in his capacity as medical director of the Studebaker Corporation he prescribed a routine subjective examination of the eyes of applicants seeking employment by the corporation, that is, the examiner enters into no part of the examination other than to record what the applicant sees. The examiner makes no objective findings whatsoever. The Snellen chart which is recognized among occulists as the standard

device for making tests of that character is used. The applicant, being placed before the chart at the proper distance, is asked to read from the top of the chart down as far as he can or cannot see. The eyes are examined independently. If the applicant is unable to read the largest letter he is considered blind in the eye with which he is trying to read. At least he is industrially blind. He may have light perception but he does not have useful vision. It is less than 20/200 vision, less than one-tenth normal which is an industrially blind eye.

Mr. Galbrith, a male nurse and assistant to Dr. Hilbert at the Studebaker Corporation, testified that on November 8, 1929, and January 3, 1930, when appellant was being transferred from one department of the plant to another, he made a test of appellant's eyes pursuant to the method outlined by Dr. Hilbert. From this examination, as appeared from the record made at that time, appellant said he was unable to see the top letter on the chart with his left eye. The record does not disclose whether this test was made with or without glasses. We assume, therefore, that it was made without glasses.

It is established beyond the realm of controversy that this court will not weigh the evidence on appeal from an award of the full Industrial Board, and that the finding of facts and any reasonable inferences that may have been drawn therefrom by the Board are binding upon this court unless the evidence is of such a conclusive character as to force a contrary conclusion. But in order to reach a contrary conclusion we cannot weigh the evidence nor disregard any reasonable inferences which the Industrial Board may have drawn from the facts which the evidence tends to establish. *Swing* v. *Kokomo, etc., Co.* (1921), 75 Ind. App. 124, 125 N. E. 471; *Roush* v.

*Duncan & Son* (1933), 96 Ind. App. 122, 183 N. E. 410; *Bickel* v. *Ralph Sollitt, etc.* (1933), 97 Ind. App. 57, 184 N. E. 196.

In considering the sufficiency of the finding of facts to sustain the award and the sufficiency of the evidence to sustain the finding of facts in the instant case, we must keep in mind the provisions of clause f, of sec. 31, Acts 1929, p. 537, sec. 40-1303, Burns 1933, sec. 16407, Baldwin's 1934, which fixes the compensation for loss or impairment of vision. *Ebbw Vale, etc., Co.* v. *Quackenbush* (1927), 86 Ind. App. 639, 159 N. E. 155. That clause reads, as follows:

"For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses, one hundred and fifty weeks, and for any other permanent reduction of the sight of an eye, compensation shall be paid for a period proportionate to the degree of such permanent reduction."

The "Workmen's Compensation Act" was enacted by the Legislature for the protection of employees engaged in industry, who, in many instances, were without any remedy for relief in case of accident resulting in injury and is to be liberally construed in order that its humane purposes may not be defeated. See *Czuczko* v. *Golden-Gary Co.* (1932), 94 Ind. App. 47, 177 N. E. 466; and authorities there cited.

It is to be observed that clause (f) provides for compensation, *"For the permanent loss of the sight of an eye,"* and that it does not attempt to fix any definite standard or capability as to sight, and this court has no authority to set up any such standard from which to start. *Eureka, etc., Co.* v. *Melchro* (1927), 85 Ind. App. 552, 154 N. E. 774. (Our italics.)

The language of the statute does not provide by its terms, and it cannot be construed as providing, that

the employee is not entitled to compensation "for the permanent loss of the sight of an eye," if previous to the accident resulting in the injury it is found as a fact that the normal vision of the eye had been reduced to one-tenth or less with or without glasses.

So the finding of the Industrial Board that appellant was industrially blind in his left eye, if supported by any evidence, would not be sufficient to sustain the award denying appellant compensation, for the permanent loss of the sight of his left eye.

We hold therefore that the facts as found by the Industrial Board are not sufficient to sustain the award and that it is contrary to law.

The award is reversed with instructions to the full Industrial Board to enter an order awarding appellant compensation at the rate of $13.98 per week, from October 7, 1934, for a period of 150 weeks, all past due payments to be paid in cash in a lump sum.