KINZIE *v.* GENERAL TIRE & RUBBER COMPANY.

[No. 29,430.   Filed May 16, 1956.   Rehearing denied
August 10, 1956.]

*Frank V. Dice, Dice & Keith,* of Peru, for appellant.

*Plummer & Plummer,* of Wabash, for appellee.

*James L. Murray, Murray, Mannon, Fairchild & Stewart,* of Indianapolis, Amicus Curiae.

ACHOR, J.—The question presented by this appeal is whether appellant is entitled to recover Workmen's Compensation for the total permanent loss of the sight of an eye as a result of an accidental injury in which he had only 20/400 vision immediately prior to the injury. The full board denied recovery. From that decision appellant prosecuted this appeal.

The only controversy existing is the board's conclusions of law based upon the facts as it found them. The board found that appellant lost his left eye as the result of an accident on May 11, 1953 in the course of his

employment at appellee's plant, but that said accident neither aggravated nor increased the loss of vision in appellant's eye within the provisions of the Workmen's Compensation Act. This finding was based upon the further fact found by the board that prior to the said accidental injury appellant had sustained an injury to his left eye, which injury had caused a cataract on said eye, which condition resulted in a reduced vision of that eye to a mere light perception; that consequently appellant was "industrially blind" in his said left eye prior to the said accidental injury on May 11, 1953. The board further found that following said accident it was necessary to enucleate appellant's left eye and replace it with an artificial member. On the basis of these facts the board concluded that appellant take nothing on his (Form 9) claim for compensation.

It is appellant's position that, based upon the facts presented, the decision of the board is contrary to law; that the permanent and *total loss* of the sight of an eye in which there was some light perception is fully compensable, the same as if the eye were a good one.

Since this is a special statutory proceeding, a decision in this case, of necessity, involves a construction of the controlling statutes. Appellant grounds his case first upon the fact that the statute as enacted in 1929, and amended in 1947, provided as follows: "For the permanent loss of the sight of an eye or its reduction to one-tenth (1/10) of normal vision with glasses, one hundred and fifty (150) weeks." §40-1303 (a) (3), Burns' 1952 Repl. (Acts 1949, ch. 243, §5, p. 808; 1951, ch. 294, §3, p. 943.)[1]

1. *Amendment.* The 1955 amendment substituted the words "one-fourth" for "one-tenth" in subsection (a) (3).

For construction of said statute, appellant relies upon the case of *Cunya* v. *Vance* (1935), 100 Ind. App. 687, 692, 693, 197 N. E. 737, 740. In fact, appellant asserts that said case is controlling of the issue before us. In that case the appellant had a vision of less than 20/200 in the injured eye prior to the injury for which he sought compensation, and the Industrial Board denied recovery upon the theory that the appellant who was already "industrially blind" could not recover for the subsequent loss of the eye. However, the Appellate Court reversed the award, stating that under existing statutes the employee was entitled to an award for compensation for the full period of 150 weeks. In support of its decision, the court stated:

> "In considering the sufficiency of the finding of facts to sustain the award and the sufficiency of the evidence to sustain the finding of facts in the instant case, we must keep in mind the provisions of clause f, of §31, Acts 1929, p. 537, §40-1303 Burns' 1933, . . . which fixes the compensation for loss or impairment of vision. *Ebbw Vale, etc., Co.* v. *Quackenbush* (1927), 86 Ind. App. 639, 159 N. E. 155. That clause reads, as follows:
>
> " 'For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses, one hundred and fifty weeks, . . .'
>
> . . . . . . .
>
> "It is to be observed that clause (f) provides for compensation, *'For the permanent loss of the sight of an eye,'* and that it does not attempt to fix any definite standard or capability as to sight, and this court has no authority to set up any such standard from which to start. *Eureka, etc., Co.* v. *Melchro* (1927), 85 Ind. App. 552, 154 N. E. 774. (Our italics.)
>
> . . . . . . .
>
> "So the finding of the Industrial Board that appellant was industrially blind in his left eye, if supported by any evidence, would not be sufficient to sustain the award denying appellant compensa-

tion for the permanent loss of the sight of his left eye."

We concur in appellant's contention that the above case is controlling of the decision in this case, unless some new authority has been enacted by statute which has since authorized the Industrial Board to "set up any such standard from which to start," and compute the award for compensation on the basis of the aggravation or increase of impairment resulting from the subsequent injury.

The statute which were controlling at the time of the decision of *Cunya* v. *Vance, supra,* were as follows:

"For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses, one hundred and fifty (150) weeks, . . ." §40-1303 (f), Burns' 1933 (Acts 1929, ch. 172, §31, p. 536).

"If an employee has sustained a permanent injury in another employment than that in which he received a subsequent permanent injury by accident, such as specified in section thirty-one §40-1303), *he shall be entitled to compensation for the subsequent injury in the same amount as if the previous injury had not occurred.*" (Our italics.) §40-1305, Burns' 1933 (Acts 1929, ch. 172, §33, p. 536).

Therefore, at the time of the injury sustained in the case of *Cunya* v. *Vance, supra,* an injured employee was by express provision of the statute "entitled to compensation for the subsequent injury in the same amount as if the previous injury had not occurred," even though the prior injury occurred in the course of employment to the same member of the body and compensation may have been paid therefor. This statutory provision provided a clear declaration of public policy in favor of the payment of full compensation for "subsequent in-

jury in the same amount as if the previous injury had
not occurred." This declaration of policy was sufficient
to sustain the decision of the Appellate Court in the
*Cunya* case. In the face of these statutes, obviously the
court had "no authority to set up any . . . standard
from which to start" and therefrom compute the aggra-
vation or increase of impairment resulting from the
subsequent injury, and to fix its award solely on the
basis of such increase. Rather, under the statute, it
was the mandatory duty of the board to fix its award
on the basis of the most recent injury "as if the pre-
vious injury had not occurred." Therefore the decision
in the *Cunya* case, *supra*, was correct, under the statute
as it then existed.

However, in 1945, following the decision of the *Cunya*
case, *supra*, §40-1305 provision of the act was amended
to read as follows:

"If an employee has sustained a permanent in-
jury either in another employment, or from other
cause or causes than the employment in which he
received a subsequent permanent injury by acci-
dent, such as specified in section 31 (§40-1303), he
shall be entitled to compensation for the subsequent
permanent injury in the same amount as if the pre-
vious injury had not occurred; provided, however,
that if the permanent injury for which compensa-
tion is claimed, results only in the aggravation or
increase of a previously sustained permanent in-
jury or physical condition, regardless of the source
or cause of such previously sustained injury or
physical condition, the board shall determine the
extent of the previously sustained permanent in-
jury or physical condition, as well as the extent of
the aggravation or increase resulting from the sub-
sequent permanent injury, and shall award com-
pensation only for that part of such injury, or
physical condition resulting from the subsequent
permanent injury. Provided further, however, that
amputation of any part of the body or loss of any
or all of the vision of one or both eyes shall be con-

sidered as a permanent injury or physical condition." §40-1305, Burns' 1952 Repl. (Acts 1945, ch. 284, §2, p. 1261.)

It is appellee's contention that the legislative purpose and effect of the above amendment of the act was to thereafter prevent the result which was reached in the *Cunya* case, *supra*. It is appellee's position that in keeping with this purpose, section 40-1305, as amended, not only authorizes, but directs the board in event of a subsequent injury to a previously injured member of the body, which "results only in the aggravation or increase of a previously sustained permanent injury or physical condition," first to determine the extent of the previously sustained permanent injury or physical condition. Then, from this starting point, it directs the board to compute the compensation to be awarded for the subsequent injury on the basis of the compensable aggravation or increase of the permanent injury or physical condition,—which authority and directive did not exist under the previous statute.

In support of its position appellee relies upon the more recent case of *Moore* v. *Staton* (1950), 120 Ind. App. 339, 341, 342, 92 N. E. 2d 564. In that case the Appellate Court stated:

"The statute was amended in 1945 and is a distinct departure from the law as it existed before its amendment. Under the former law, the sum total of the prior condition and the increase or aggravation thereof by a subsequent injury was compensable. The amendment is contained in the first proviso found in the above section and the facts in this case present a case clearly within the provisions within the amendment.

"The appellee had sustained former injuries that had resulted in permanent partial impairment in his left arm and this condition existed before the accident referred to in the appellee's application.

. . . . . . .

> "The Full Industrial Board, however, failed to find and determine the extent of the previously sustained permanent injury or physical condition and likewise failed to find and determine the extent of the increase thereof caused by the accidental injuries referred to in appellee's application herein.
>
> . . . . . . .
>
> "This cause is remanded to the Industrial Board of Indiana and said board is directed to discharge its statutory duty by making findings on the essential facts, and by entering an award based thereon."

Appellant concurs in the reasoning of the above case but argues that the facts in that case are distinguishable from those in the case at bar and the *Cunya* case, *supra,* as they relate to the express provisions of §40-1305, *supra.* Appellant contends that the amended portion of the statute as construed by the *Moore* case, *supra,* has no application to the circumstances where, as here, there is a *complete loss* of vision or a member of the body. Appellant insists that the original part of the statute and the rule in the *Cunya* case are still the law unless, as expressly provided by the amending provisos of the act, the "permanent injury for which compensation is claimed, *results only* in the *aggravation or increase* of a previously sustained permanent injury or physical condition," (our italics) as distinguished from a *complete loss* of sight as was the fact in both this and the *Cunya* case. In other words, it is appellant's position that if the subsequent injury *results only* in an *aggravation or increase* of the injury or physical condition and *not a complete loss,* the rule of the *Moore* case, *supra,* applies. But appellant asserts that if the subsequent injury results in a complete loss, as in this case, then the rule of the *Cunya* case is still controlling.

Furthermore, appellant urges that inasmuch as there is doubt as to whether §40-1305, *supra,* as amended, is

applicable to a subsequent injury which results in a complete loss of a previously injured member of the body, the statute must be construed liberally in favor of the injured employee in order to accomplish the humane purposes of the act. *Cunya* v. *Vance, supra.* Appellant insists that if such liberal construction is applied to the act the rule in the *Cunya* case is still controlling.

Appellee on the other hand urges that the amended statute, *supra,* is neither ambiguous nor subject to the construction asserted by appellant; that it is, in fact, by its obvious purpose and express terms conclusive in its support of the decision of the board.

In determining this issue let us look first to the purpose of the amendment. It seems obvious that the purpose of the amendment was to remove one of the major barriers against the employment of the physically handicapped persons by dealing more fairly with the employer of such persons. From common experience we know that afflicted members of the body are generally not only less productive than members which are whole, but that such afflicted members are also more susceptible to subsequent injury.

Omitting the question of negligence on the part of either the employer or the employee and the elements of pain and suffering, which is the viewpoint contemplated in Workmen's Compensation Act, there is no good reason why an employer should be required to pay compensation a second time for the same impairment, or why he should pay compensation for any impairment wholly unrelated to his present employment. Neither is there any good reason why an employer should be required to pay compensation for an injury to an already afflicted member of the employee's body, unless such injury results in an aggravation or increase of

impairment within the standard of impairment fixed by the act.

Furthermore, construction of the statute urged by appellant fails to meet the test of reason within itself. Presented with two employees who are already "industrially blind," there is no good reason why an employer should pay full compensation (150 weeks) to one who suffers a complete loss of sight as if the previous injury had not occurred, but the other employee whose sight is reduced to within a shadow of complete blindness should receive nothing. Both were "industrially blind" before and after the injury, and as far as any actual resultant vision is concerned, the difference is inconsequential. There is no reason why the injury of one should place a greater burden upon industry than the other, or why one employee should receive full compensation and the other nothing.

But independent of the apparent purpose of the amendment or its reasonable application, it occurs to us that the legislative intent of §40-1305, *supra,* is clearly expressed. In analyzing the act as amended, we find that, following the original portion of the act which was substantially reenacted, the legislature first added the following proviso thereto:

"Provided, however, that if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, *the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent injury, and shall award compensation only for that part of such injury, or physical condition* resulting from the subsequent permanent injury." (Our italics.)

The above proviso not only authorized, it *required* that the board determine first the fact of a permanent injury and the extent thereof. It made it necessary that the board then determine whether the injury is a subsequent permanent injury. If it is determined that the injury is a subsequent injury, the board must then determine the extent of the injured person's previous "permanent injury or physical condition." If from these facts it is determined that the permanent injury for which compensation is claimed "results only in an aggravation or increase of the previously sustained injury or physical condition," then, as the statute provides, the board "shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury." §40-1305, *supra*.

The purpose of the above proviso to the amended act and the procedure to be followed thereunder seems clear. However, in order to avoid any uncertainty as to the nature or extent of the injuries to which the above amended proviso of the statute should apply, the legislature added a second clarifying proviso to the first, as follows: "Provided further, however, that amputation of any part of the body or loss of any or all of the vision of one or both eyes shall be considered as a permanent injury or physical condition."

What is the effect of applying the latter proviso to the first? Obviously, any total "permanent injury or physical condition" of the character above referred to could, under no circumstances relate to the previous injury, and be a standard from which the board could start and therefrom compute an "aggravation or increase" resulting from a subsequent "permanent injury or physical condition," since under such conditions the

impairment would have been complete for all purposes from the first instance.

We conclude, therefore, that the reasonable and only construction to which §40-1305, as amended, is susceptible brings the facts in this case within the application of the amendment as expressed in the *Moore* case, *supra*. Appellant having previously sustained an injury or physical condition resulting in 20/400 vision, which the Industrial Board for the purpose of Workmen's Compensation described as "industrial blindness," he was not entitled to compensation for a subsequent injury to the same eye although as a result of the subsequent injury he suffered complete loss of the eye.

We assume that in using the term "industrial blindness" the board intended to describe appellant's prior injury as being "permanent," and that the extent of such blindness was intended to describe a standard of vision of less than 20/200 "with glasses." However, the board having failed to find in specific and certain terms the fact that appellant's prior injury was "permanent" or that the extent of his "industrial bliidness" was calculated "with glasses," the cause is referred back to the board with instructions for further proceedings consistent with this opinion.

Bobbitt, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 134 N. E. 2d 212.