LEASE *v.* BAKER, MCHENRY & WELCH, INC.
AND GENERAL ACCIDENT GROUP.

[No. 1269A227. Filed May 12, 1970. Rehearing denied with opinion August 4, 1970. Transfer denied with opinion July 13, 1971. Petition for Rehearing of Denial of Transfer denied September 8, 1971.]

*John D. Raikos* and *David L. Martenet, Raikos, Melangton & Dougherty,* of counsel, all of Indianapolis for appellant.

*Tony Foster* and *Donald L. Jackson, Bingham, Summers, Welsh & Spilman,* of counsel, all of Indianapolis, for appellees.

SHARP, J.—This is an appeal from the award of the Full Industrial Board which allowed Appellant-Employee 41.125 weeks of compensation based upon a permanent impairment of 23.5% loss of vision to his right eye. The eye was injured in an accident within the scope of Appellant's employment, and liability was stipulated below. This appeal concerns only the manner in which compensation is to be fixed.

The facts are not in dispute. Prior to the accident Appellant-Employee had vision as follows:

|       | Uncorrected        | With Glasses |
|-------|--------------------|--------------|
| Right | 20/400 to 20/500   | 20/20        |
| Left  | 20/400 to 20/500   | 20/20        |

Following the accident and corrective surgery his vision was:

|       | Uncorrected | With Glasses | With Contact Lens & Glass      |
|-------|-------------|--------------|--------------------------------|
| Right | Aphakia     | Aphakia      | 20/20 or 20/50                 |
| Left  | 20/400      | 20/20        | 20/20 No Contact Necessary     |

Appellant-Employee's uncorrected vision prior to the accident was a natural condition, fully correctable by glasses.

The Appellant was injured on February 14, 1967, when a test plug blew out while he was testing a drain line under pressure. Aphakia is "absence of the crystalline lens of the eye, or the anomalous state of refraction resulting therefrom"; necessary surgery following the accident required the lens of Appellant's eye be removed. When a contact lens is inserted in Appellant's right eye it performs the function of the removed lens, allowing restored vision in Appellant when he wears glasses.

This appeal involves the question of how Appellant's compensation is to be measured. Appellant argues that he has suffered a complete loss of his right eye and should be totally compensated for such a loss under the Workmen's Compensation Statute. That section, Acts 1929, ch. 172, § 31 (as amended), the same being Burns Indiana Statutes Annotated § 40-1303(a)(3), reads as follows:

"(3) For the permanent and complete loss of vision by enucleation or its reduction to one-tenth [1/10th] of normal vision with glasses, one hundred seventy-five [175] weeks."

The Appellees contend that Appellant was industrially blind prior to the accident in that his uncorrected vision was 20/400 to 20/500. As such, Appellees state, his industrial blindness is considered a prior physical condition by the Workmen's Compensation Statute, Acts 1929, ch. 172, § 33, as amended by Acts 1945, ch. 284, § 2, the same being Burns Indiana Statutes Annotated § 40-1305. That section reads as follows:

"Subsequent permanent injury — Aggravation — Amputation. If an employee has sustained a permanent injury either in another employment, or from other cause or causes than the employment in which he received a subsequent permanent injury by accident, such as specified in section 31 [§ 40-1303], he shall be entitled to compensation for the subsequent permanent injury in the same amount as if the previous injury had not occurred: Provided, however, That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury, and shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury. Provided further, however, That amputation of any part of the body or loss of any or all the vision of one or

both eyes shall be considered as a permanent injury or physical condition."

By following Burns § 40-1305, Appellant would be compensated as provided by Acts 1929, ch. 172, § 31, as amended by Acts 1963, ch. 387, § 7, found as Burns Indiana Statutes Annotated § 40-1303 (b) (4) :

> "(4)  For any permanent reduction of the sight of an eye less than a total loss as specified in section 31(a)(3), a compensation shall be paid for a period proportionate to the degree of such permanent reduction without correction or glasses. However, when such permanent reduction without correction or glasses would result in a one hundred per cent [100%] loss of vision, but correction or glasses would result in restoration of vision, then in such event, compensation shall be paid for fifty per cent [50%] of such total loss of vision without glasses, plus an additional amount equal to the proportionate amount of such reduction with glasses, not to exceed an additional fifty per cent [50%]."

This case squarely presents for our consideration the definition of "industrial blindness". The question is reduced in its essentials to whether industrial blindness is to be gauged by Appellant's vision "with glasses" or Appellant's vision "uncorrected". Appellee's position requires the latter test be applied in order that Appellant have a "physical condition" within the meaning of Burns 40-1305, which would then preclude any possible recovery for a total loss of his eye under Burns § 40-1303(a)(3). If Appellant has a prior physical condition, industrial blindness, he of course cannot be compensated for the loss of something he does not legally have, industrial sight.

"Industrial Blindness" is defined by the section of the Workmen's Compensation Statute which provides compensation for such condition, Burns § 40-1303(a) (3), as follows:

> ". . . permanent and complete loss of vision by enucleation or its reduction to one-tenth [1/10] of normal vision with glasses. . . ."

Normal vision is 20/20 under the Snellen chart, the testing chart method used by the Industrial Board. Under the above statutory definition and the binding precedents of our Supreme Court, we understand and hold the term "industrial blindness" to mean permanent and complete loss of vision by enucleation or its reduction to vision with glasses of less than 20/200. This is consistent with *Kinzie* v. *Gen. Tire & Rubber Co.*, 235 Ind. 592, 603, 134 N.E. 2d 212 (1956):

> "We assume that in using the term "industrial blindness" the board intended to describe appellant's prior injury as being "permanent", and that the extent of such blindness was intended to describe a standard of vision of less than 20/200 "with glasses". However, the board having failed to find in specific and certain terms the fact that appellant's prior injury was "permanent" or that the extent of his "industrial blindness" was calculated "with glasses", the cause is referred back to the board with instruction for further proceedings consistent with this opinion."

Thus, Appellant was not "industrially blind" prior to his accident, and did not have a prior "physical condition" within the meaning of Burns § 40-1305. Absent the limitation of Burns § 40-1305, the next question is whether or not the Appellant is entitled to relief under Burns § 40-1303 (a) (3), or stated in its factual context, is Appellant industrially blind now *After* his accident?

The evidence reveals that Appellant's vision in his right eye following his accident and surgery, with glasses, is the condition aphakia, or no effective vision at all. However with both contact lens and glasses his vision was 20/50. We must then construe Burns § 40-1303 (a) (3) to decide whether or not that section would include contact lenses within the meaning of the term "with glasses".

The initial Workmen's Compensation statute, Acts 1915, ch. 106, § 31 (d), p. 400, contains the following language:

"(d) for the permanent and irrevocable loss of the sight of one eye *or its reduction to one-tenth of normal vision with glasses* . . . 100 weeks;" (Emphasis supplied)

Thus the test under Burns § 40-1303(a)(3) has survived the numerous revisions and amendments to the Workmen's Compensation statute since its inception. When this language was written in 1915 contact lenses were not yet invented, and it therefore is obvious that the legislature did not specifically intend contact lenses within the meaning of its definition of "glasses". The failure of the legislature to amend this section to include contact lenses or other forms of vision correction is significant in considering legislative intent to present date, and as noted above, the language has survived unscathed.

Taking "glasses" in its ordinary and common meaning, "contact lenses" is not included within any such definition. While on many occasions they perform the same function, the instant case is a glaring example of a different use of a contact lens, one which glasses could never perform. The contact lens used by the Appellant in his right eye actually takes the physical place and performs the functions of the lens of this original whole eye organ. It is, then, an artifical member or limb. In this sense, it would never be contended that because an amputee had been provided with a functional artificial limb that he should be denied compensation for the loss of his own limb. We believe there are more differences between glasses and contact lenses in their function, adaptability, problems of usage and various other factors which preclude "contact lenses" from being included in the plain and ordinary meaning of "glasses" as used in Burns § 40-1303(a)(3).

Applying our interpretation to the uncontroverted evidence that with glasses the vision in Appellant's right eye is aphakia, Appellant is industrially blind after his accident. This clearly entitles him to compensation for the full loss of his right eye under the terms of Burns § 40-1303(a)(3). How-

ever, since the Industrial Board has failed to enter a Finding of Facts upon which it based its decision as required by Acts 1929, ch. 172, § 60, being Burns § 40-1511, this cause must be and is remanded to the Industrial Board for further proceedings consistent with this opinion.

Pfaff, White, JJ., concur.

Hoffman, P.J., Dissents with Opinion.

## DISSENTING OPINION

HOFFMAN, P.J.—I dissent from the opinion of the majority. I do, however, agree with the definition in the majority opinion of "industrial blindness", *i.e.*, a man is "industrially blind" only when he has less than 20/200 vision with glasses. Accepting this definition, it is clear that appellant did not have a prior physical condition under Acts 1929, ch. 172, § 33, as amended by Acts 1945, ch. 284, § 2, p. 1261, Burns Ind. Stat. Anno., § 40-1305, 1965 Replacement. Only if appellant would have had vision of less than 20/20 "with glasses" prior to the accident involved in this appeal, would he have had a prior physical condition so as to make § 40-1305, *supra*, applicable.

I also agree that Acts 1963, ch. 387, § 7, p. 1025, Burns Ind. Stat. Anno., § 40-1303 (b) (4), 1965 Replacement, does not apply.

Section 40-1303 (b) (4), *supra*, reads as follows:

"(4) For any permanent reduction of the sight of an eye less than a total loss as specified in section 31 (a) (3) [this section], a compensation shall be paid for a period proportionate to the degree of such permanent reduction without correction or glasses. However, when such permanent reduction without correction or glasses would result in a one hundred per cent [100%] loss of vision, but correction or glasses would result in restoration of vision, then in such event, compensation shall be paid for fifty per cent [50%] of such total loss of vision without glasses, plus an additional amount equal to the proportionate amount of such

reduction with glasses, not to exceed an additional fifty per cent [50%]."

Section 40-1303 (b) (4), *supra,* would not apply to appellant because he had no vision—*uncorrected*—prior to the injury. This was recognized by Dean Small in 1 Workmen's Comp. Ind. Laws (1950), § 8.28 at 202, when he stated:

"Glasses as a Factor

"In determining impairment under subsection (b), paragraph (4), dealing with permanent reduction in sight not amounting to industrial blindness, glasses have no part. It is only under subsection (a), paragraph (3) that glasses are considered in determining normal vision. * * *"

Although it is not decisive in this case, I disagree with the holding of the majority that "contact lenses" are not within the ordinary and common meaning of the word "glasses." Contact lenses, when used to serve the same function as glasses are included within the term "glasses." Also, "glasses" as used in the Workmen's Compensation Act includes contact lens, at least when they are used to serve the same function as glasses. However, in this case the contact lens is serving a different function and is not included within the word glasses.

I agree with the majority that § 40-1303 (a) (3), which reads as follows, does apply:

"(3) For the permanent and complete loss of vision by enucleation or its reduction to one-tenth [1/10] of normal vision with glasses, one hundred seventy-five [175] weeks."

Unlike the majority, however, I do not believe that appellant is entitled to the full 175 weeks. Appellant is entitled to the proportionate permanent loss of vision resulting from the industrial injury. Section 40-1303 (a) (3), *supra,* does apply to an employee who has vision, with glasses, prior to an injury and has less vision, with glasses, as a result of the injury. For the loss of vision, with glasses, the employee is

paid the percentage of his loss of vision—with 175 weeks being 100% loss of vision.

Appellant *now* has a prior physical condition within the terms of § 40-1305, *supra,* by the definition of industrial blindness accepted by the majority. However, the application of § 40-1303 (a) (3), *supra,* completely emasculates § 40-1305, *supra,* and makes it nugatory as to the vision which appellant has retained and, in effect, pays appellant in advance for vision which he has not lost.

I further disagree with the holding that the contact lens in this case is like an artificial member or limb.

Section 40-1303, *supra,* specifically states the compensation which should be awarded an employee in the event of an industrial accident resulting in permanent injury. When speaking of "eyes" in § 40-1303, *supra,* the Legislature at all times referred to "vision." Thus, an employee is to be compensated for permanent impairment under the Workmen's Compensation Act only for a loss of, or a reduction in, his ability to see.

For a permanent injury in which part of the eye would be lost without a resulting loss of vision—the employee would be entitled to no compensation for permanent impairment. The loss compensable under the Act is *loss of vision.*

The majority opinion has judicially added to § 40-1303, *supra,* the loss of a portion of the eye, in this case the crystalline lens, notwithstanding the fact that modern medical technology has replaced the lens to minimize the loss of "vision."

If the theory of the majority were to be applied to an employee who has his crushed femur stabilized with a "pin" or with a "metal plate" and "screws", he would be compensated for the loss of the entire limb because without the mechanical additions to his body he would have lost the use of the leg. Likewise, an employee who suffered burns in an industrial accident would be entitled to compensation for loss of the arm on the theory that without the skin graft he would have lost the arm. The same theory is utilized when compensation

is awarded for a total loss of "vision" to an employee who still has 20/50 vision.

The contact lens in the instant case should be considered as part of the medical care and treatment given by the physician in the effort to minimize appellant's loss of vision. The fact that the lens is removable and was not surgically inserted does not make it the equivalent of an artificial limb.

I would remand this case to the Full Industrial Board with instructions to take further action consistent with this opinion.

NOTE.—Reported in 258 N. E. 2d 175.

## OPINION ON PETITION FOR REHEARING
[Filed August 4, 1970.]

SHARP, J.—In their Petition for Rehearing the Appellees state that this court has erred by equating industrial blindness with a "prior physical condition" within the meaning of Burns Indiana Statutes Annotated § 40-1305, and Appellees contend this court has ignored the dictates of Burns' Indiana Statutes Annotated § 40-1305.

The procedure the Industrial Board must follow is clear. Burns Indiana Statutes Annotated § 40-1305 dictates the initial procedures, as explained in *Kinzie* v. *Gen. Tire & Rubber Co.*, 235 Ind. 592, 602, 134 N. E. 2d 212 (1956):

> "The above proviso not only authorized, it *required* that the board determine first the fact of a permanent injury and the extent thereof. It made it necessary that the board then determine whether the injury is a subsequent permanent injury. If it is determined that the injury is a subsequent injury, the board must then determine the extent of the injured person's previous 'permanent injury or physical condition.' If from these facts it is determined that the permanent injury for which compensation is claimed 'results only in an aggravation or increase of the previously sustained injury or physical condition,' then, as the statute provides, the board 'shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury.' § 40-1305, *supra*."

If the claimant is found to have a "prior physical condition" within the meaning of the statute, his compensation is limited to that prescribed by Burns' Indiana Statutes Annotated § 40-1303 (b) (4). This section guides the amount of compensation for "aggravation or increase of a previously sustained injury or physical condition". There is, however, a point beyond which an eye injury or condition cannot be further aggravated or increased: industrial blindness. If the claimant is industrially blind prior to the accident which gives rise to his claim, he may not recover compensation. He has lost nothing.

The question presented by Appellees' Petition for Rehearing is whether Appellant's sight should be gauged with glasses or without glasses in determining whether or not Appellant has a prior physical condition within the meaning of Burns Indiana Statutes Annotated § 40-1305. Appellees are correct that a prior physical condition or injury is not the same as industrial blindness. Our opinion decides the question by its holding, but the reasons should be amplified.

Under Burns Indiana Statutes Annotated § 40-1305 a claimant's vision prior to his accident should be gauged *with glasses* in deciding the presence and extent of any prior physical condition or injury.

The purpose of Burns Indiana Statutes Annotated § 40-1305 as it now stands after the 1945 Amendment is to more fairly treat employers who have hired handicapped people, by not holding them liable for impairment of an already injured employee. The result is allowance of compensation only for the "aggravation or increase of a previously sustained injury or condition". See *Kinzie* v. *Gen. Tire & Rubber Co.*, *supra*. The amount of such compensation is computed according to Burns Indiana Statutes Annotated § 40-1303 (b) (4).

As mentioned above, a finding of prior industrial blindness negates any recovery of compensation. Industrial blindness

is gauged "with glasses", or to state the rule in the positive, industrial sight is gauged "with glasses". By the same token, any loss of vision which may be considered a prior physical injury or condition within the meaning of Burns Indiana Statutes Annotated § 40-1305 must be gauged "with glasses". To hold otherwise would be to hold as a matter of law that everyone who wears glasses is handicapped, an absurb result we believe not contemplated by the statute. Persons with 20/20 vision "with glasses" are neither less productive nor more susceptible to injury, the two tests of the statute's purpose set forth in the *Kinzie* case, *supra,* than employees with 20/20 vision without glasses.

Further, a "prior physical condition or injury" to vision must be gauged with glasses for Burns Indiana Statutes Annotated § 40-1305 to be consistent within itself. As prior industrial blindness negates any award of compensation, partial compensation for a prior condition not as severe must be a different measure of the *same standard* used to determine industrial blindness.

The obvious difficulty in this small area develops when the measure of compensation is consulted as a guide to interpreting the purpose of the whole, that is, when Burns Indiana Statutes Annotated § 40-1303 (b) (4) is consulted with the hope of finding a consistent method of compensation in all cases. This is not possible under the present statute.

Burns Indiana Statutes Annotated § 40-1303 (b) (4) regulates the amount of compensation to be awarded under two inconsistent sets of circumstances. Initially, this section determines the amount of compensation when a previously whole eye, *i.e.,* an eye with no prior condition or injury, an eye that has 20/20 vision with glasses, is partially injured or destroyed, but not to the point of industrial blindness. Secondly, it also determines the amount of compensation when an eye with a prior condition or injury is injured or destroyed. The method of determining compensation is clear in the former

case, but is confusing in the latter. Suppose a man with a prior physical condition, *i.e.*, vision 20/180 with glasses and 20/400 without glasses, is injured in a compensable accident which reduces his vision to 20/200 with glasses and 20/500 without glasses. Because he has a prior physical condition or injury his compensation is measured by Burns Indiana Statutes Annotated § 40-1303 (b) (4). His compensation is measured in two parts: First, his vision prior to the accident is completely ignored and he is immediately awarded 50% compensation because prior to the accident he was not industrially blind and has no effective vision without glasses after the accident even though he had none prior to the mishap; Secondly, he is awarded an additional 10% in compensation because with glasses he has lost 10% of his prior vision with glasses. Thus, his total award is 60% compensation, while another man whose vision with glasses prior to an accident is 20/200 will receive nothing. As is obvious, Burns Indiana Statutes Annotated § 40-1303 (b) (4) works well for compensating a whole eye which is partially injured, but creates an anomaly when juxtaposed to fix compensation for an injury to an eye with a prior condition.

It might be argued that this anomaly could be avoided by gauging the prior condition or injury of Burns Indiana Statutes Annotated § 40-1305 without glasses. This solution merely begs the real question, faulty statute drafting; the anomaly would then merely exist in Burns Indiana Statutes Annotated § 40-1305 instead of Burns Indiana Statutes Annotated § 40-1303 (b) (4). The problem would be the same: persons with uncorrected vision of less than 20/200 correctable to above 20/200, that is, people not industrially blind but with need of glasses for vision, would all be given at least 50% compensation as their vision uncorrected would still be below 20/200, plus they would receive whatever percentage of loss their corrected vision sustained from its prior corrected vision, not to exceed 50%, in addition to the above mentioned 50%. The man with 20/180 corrected vision who loses his remaining

corrected vision would still collect 60%, while a man whose vision prior to the accident is 20/200 corrected will still collect nothing.

Further, to view vision without glasses as the determining factor in whether or not a claimant has a prior condition or injury within the meaning of Burns Indiana Statutes Annotated § 40-1305 would, as mentioned above, be an inconsistency within the section itself because industrial blindness, the cut-off point of any compensation, is viewed with glasses, and also because to so hold would brand all employees who wear glasses as handicapped within the meaning of the Workmen's Compensation Statute without the policy reasons for such label and detriment being present.

In the instant case the Appellant's vision with glasses prior to his accident was 20/20. Thus, he did not have a prior physical injury or condition within the meaning of Burns Indiana Statutes Annotated § 40-1305. Absent such limitation, Appellant's compensation is to be measured by Burns Indiana Statutes Annotated § 40-1303 (a) (3) as prescribed in the majority opinion.

The Petition for Rehearing is denied.

Pfaff and White, JJ., concur.

Hoffman, P.J., dissents without opinion.

NOTE.—Reported in 260 N. E. 2d 807.