LESTER E. MOSER *v.* WARNER GEAR DIVISION OF
BORG-WARNER CORPORATION.
LEASE *v.* BAKER, MCHENRY & WELCH, INC.
LARRY L. LEASE *v.* BAKER, MCHENRY & WELCH, INC.,
GENERAL ACCIDENT GROUP.

[No. 771S202. Filed July 13, 1971.]

*Archie Lapin,* of Muncie, *John D. Raikos, David L. Martenet, Raikos, Melangton, Dougherty & Christ,* of Indianapolis, for appellants.

*Stewart, Irwin, Gilliom, Fuller & Meyer, Tony Foster, Donald L. Jackson, Bingham, Summers, Welsh & Spilman,* all of Indianapolis, for appellees.

## ON PETITION TO TRANSFER

DEBRULER, J.—These two cases are before this Court on petitions to transfer. Each was decided by the Appellate Court of Indiana by written opinion, the first being *Lester E. Moser* v. *Warner Gear Division of Borg-Warner Corp.* (1969), 251 N. E. 2d 136; and the second being *Larry L. Lease* v. *Baker, McHenry & Welch, Inc., General Accident Group* (1970), 147 Ind. App. 3, 258 N. E. 2d 175, reh. den'd (1970), 147 Ind. App. 3, 260 N. E. 2d 807. In each case the appellant sought compensation for an eye injury sustained in the course of his employment and then judicial review of an award of the full Industrial Board of Indiana. No issue of liability arises in either case. Because of the similarity of the factual situations and legal issues involved in these two cases, and the apparent variance in treatment given to these cases by the two divisions of the Appellate Court, we have decided to consider both cases in this opinion.

In the *Moser* case the appellant suffered a permanent injury to one eye, which eye prior to the injury had a visual acuity of 20/450 uncorrected and 20/20 corrected by glasses. The evidence is undisputed that after this injury, the appellant had

no effective vision in that eye and that the condition was not correctable. A hearing before a single member of the Industrial Board resulted in an award for 100% permanent partial impairment or 175 weeks of compensation for the loss of the eye. On review of this award the full Industrial Board reduced the award to 50% permanent partial impairment of 87.5 weeks of compensation. The full board based this reduction upon its determination that the eye of the appellant was industrially blind prior to the accident. On appeal the Appellate Court affirmed the award of 50% by the full board.

In the *Lease* case the appellant Lease suffered a permanent injury to one eye, which eye prior to the injury had visual acuity of 20/400 uncorrected and 20/20 corrected with glasses. After the injury the appellant Lease had no effective vision uncorrected and such condition could not be corrected by glasses. However, the evidence shows that when a special contact lens was used in conjunction with the glasses, the visual acuity of Lease was 20/50. A hearing before the single member of the Industrial Board resulted in an award of 60% permanent partial impairment or 105 weeks. On appeal, the full board awarded Lease 23.5% or 41.1 weeks. On review in the Appellate Court Lease was granted 100% or 175 weeks.

The factual situations in both the *Lease* and *Moser* cases are for the purposes of legal treatment identical. Both claimants had an eye prior to an injury which had visual acuity of about 20/400 correctable to 20/20 with ordinary glasses. Both suffered a total loss of vision in the injured eye as "total loss" is defined in I.C. 1971, 22-3-3-10, being Burns § 40-1303 (a) (3) which reads as follows:

"For the permanent and complete loss of vision by enucleation or its reduction to one tenth of normal vision with glasses, one hundred seventy-five weeks."

As stated in the Appellate Court opinion, Lease did not have one-tenth of normal vision *with glasses* after the injury, since the correction in that case to 20/50 resulted from the use of

glasses *and* a contact lens. We agree with the Appellate Court opinion in this regard. There is no dispute in the *Moser* case that Moser's eye was a 100% loss. It therefore follows in our opinion that the results in the two cases should have been the same.

On review to the Appellate Court both Moser and Lease contended that they were entitled to a 100% award for a complete loss of vision pursuant to Burns § 40-1303 (a) (3), *supra*. In response the employer in each case contended that each employee was suffering from a "previously sustained permanent injury or physical condition" within the meaning of I.C. 1971, 22-3-3-12, being Burns § 40-1305, which should result in an award of less than 100%.

> "If an employee has sustained a permanent injury either in another employment or from other cause or causes than the employment in which he received a subsequent permanent injury by accident, such as specified in section 31 (§ 40-1303) he shall be entitled to compensation for the subsequent permanent injury in the same amount as if the previous injury had not occurred: Provided, however, That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury, and shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury. Provided further, however, that amputation of any part of the body or loss of any or all of the vision of one or both eyes shall be considered as a permanent injury or physical condition."

In both cases the employer urged that since the employee had, prior to the accident, visual acuity of less than one-tenth of normal vision (less than 20/200) uncorrected, the employee was in fact suffering from a "previously sustained permanent injury or physical condition." However, each employee had 20/20 vision (normal) when measured with glasses.

The employers would urge, however, that a determination of whether a previous injury or condition exists be made without glasses. With this we cannot agree. We agree with the holding of the Appellate Court in the *Lease* case wherein that court held that no previous sustained permanent injury or physical condition is shown to exist where the claimant had normal (20/20) vision with glasses prior to the injury.

We believe that to adopt the employers' interpretation of this statute would be to unjustly and in a manner unsupported by the language of the statute, limit awards for total loss to cases wherein the claimant had a perfect eye without correction prior to the removal or total loss of vision as defined in § 40-1303 (a) (3), *supra*. Such an interpretation would preclude a total loss award even though minimal correction is necessary to attain 20/20 vision. We cannot agree with this interpretation.

The loss of an eye corrected to 20/20 with glasses must be compensated for in the same amount as an eye with 20/20 uncorrected vision. In so holding we are supported by *Kinzie* v. *General Tire & Rubber Co.* (1956), 235 Ind. 592, 134 N. E. 2d 212.

We hold that the award in each case should have been 175 weeks as compensation for total loss of vision pursuant to § 40-1303 (a) (3), *supra,* because neither had vision in the injured eye correctable with glasses to 20/200 (one-tenth of normal vision) and neither had a prior injury or physical condition within the meaning of § 40-1305, *supra,* which would serve to reduce the award, both having 20/20 corrected vision prior to the accident.

Petition to transfer in *Lease* v. *Baker, McHenry & Welch, Inc., etc.,* is hereby denied.

Petition to transfer in *Moser* v. *Warner Gear Division of Borg-Warner Corp.* is hereby granted and the opinion therein vacated. This cause is now remanded to the full Industrial

Board with instructions to apply the measure of compensation contained in § 40-1303 (a) (3) , *supra*.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 465.