ODIS F. ANTON *v.* ANTON INTERIORS, INC.

[No. 2-576A177.   Filed June 27, 1977.]

*William D. Bontrager, Bontrager, Spahn, Atwater & Arko,* of Elkhart, for appellant.

*Edward N. Kalamaros, James J. McGovern, Edward N. Kalamaros & Associates Professional Corporation,* of South Bend, for appellee.

HOFFMAN, J.—Plaintiff-appellant Odis F. Anton seeks judicial review of a negative finding of the Full Industrial Board

of Indiana denying his claim from compensation for permanent partial impairment.

The facts disclose that on March 9, 1973, appellant and a co-worker were moving an old sewing machine to make preparations for the installation of a new machine. While attempting to lift the machine, "one of the ends slipped." Within a few minutes appellant experienced pain in his right lower back and hip area. Subsequently, appellant underwent surgery for the removal of a herniated intervertebral disc at L-5, S-1 on the right side.

The facts further disclose that in 1969 appellant had a disc removed at L-4, L-5 and L-5, S-1 on the left side. This surgery was necessitated as a result of an injury received in another employment and for which workmen's compensation was paid by the former employer.

On September 8, 1972, appellant was hospitalized with low back pain with a slight amount of right sciatica.

The Full Board awarded appellant temporary total disability benefits and medical expenses. The Board further found that appellant does have a permanent partial impairment to the man as a whole, but that in light of the medical evidence presented "it cannot be determined as to whether such permanent partial impairment is due to his injury of March 9, 1973 or to the 1969 or 1972 incidents above referred to, and accordingly, no permanent partial impairment is found to relate to the accident in question, the plaintiff having failed to sustain his burden of proof in this regard."

Appellant contends that the award of the Industrial Board is contrary to law. When reviewing the record on an appeal from the Industrial Board, this Court may consider only that evidence most favorable to the findings of the Board, together with the reasonable inferences to be drawn therefrom. *Lincoln et al.* v. *Whirlpool Corp.* (1972), 151 Ind. App. 190, 279 N.E.2d 596. Further, it is not our func-

tion to determine the credibility of witnesses or weigh the evidence heard by the Board to determine for whom it preponderates. *Martin* v. *Monsanto Company* (1975), 165 Ind. App. 5, 333 N.E.2d 828. This is an appeal from a negative award of the Industrial Board and may be reversed only if it appears that the Board's decision was erroneous as a matter of law. *Lincoln et al.* v. *Whirlpool Corp., supra.* Thus, an appellant must show that the evidence before the Industrial Board was without conflict and was so conclusive in nature and character as to lead to but one conclusion in the minds of reasonable men, and that the Industrial Board reached a contrary conclusion. *Davis* v. *Webster* (1964), 136 Ind. App. 286, 198 N.E.2d 883.

Dr. Aristides P. Papadopoulos testified that in his opinion appellant sustained a 15% permanent partial impairment of the man as a whole as a result of the surgery of May 17, 1973. Appellant contends that the evidence leads solely to the conclusion that the impairment, if any, which existed as of March 9, 1973, was agravated by the compensable injury which occurred on March 9, 1973. Appellant thus concludes that he was entitled to compensation under the principle that where an accidental injury, arising out of and in the course of employment, aggravates, accelerates, or activates a preexisting condition of or injury to an employee, the result is compensable. *See, Earhart* v. *Cyclone Fence Co.* (1934), 99 Ind. App. 48, 190 N.E. 558.

Although Dr. Papadopoulos testified that appellant was 15% permanently partially impaired as a result of the May 17, 1973 surgery, he further testified that, in his opinion, part of the 15% rating existed before March 9, 1973. Moreover, he could not determine how much of the 15% existed before March 9, 1973.

Dr. Wiliam A. Stark testified that in his opinion appellant has a permanent partial impairment of 8% of the man as a whole. However, he, too, could not determine how much of his

8% impairment rating was due to the injury of March 9, 1973, or to the incidents of 1969 or 1972.

Since the medical testimony indicates that appellant was permanently impaired before the occurrence of the accident here in question, a competing principle to that urged by appellant is drawn into consideration. IC 1971, 22-3-3-12 (Burns Code Ed.), provides as follows:

"Subsequent permanent injury—Aggravation—Amputation.—If an employee has sustained a permanent injury either in another employment, or from other cause or causes than the employment in which he received a subsequent permanent injury by accident, such as specified in section 31 [22-3-3-10], he shall be entitled to compensation for the subsequent permanent injury in the same amount as if the previous injury had not occurred: Provided, however, That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury, and shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury. Provided further, however, That amputation of any part of the body or loss of any or all of the vision of one or both eyes shall be considered as a permanent injury or physical condition."

This statute requires the Industrial Board to first determine the fact of a permanent injury and the extent thereof. It must then determine whether the injury is a subsequent permanent injury. If the Board finds that the injury is a subsequent permanent injury, it must then determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the permanent injury. An award of compensation is made only for that part of such injury or physical condition resulting from the subsequent permanent injury. *Kinzie* v. *Gen. Tire & Rubber Co.* (1956), 235 Ind. 592, 134 N.E.2d 212.

The application of the statute extends to instances where, at the time of the accident, the claimant is already suffering an impairment or disability in the affected members as opposed to instances where he merely has a physical condition which renders him more susceptible to being injured. *Bethlehem Steel Corporation* v. *Cummings* (1974), 160 Ind. App. 160, 310 N.E.2d 565 (transfer denied). *See also,* Small, Workmen's Compensation Law, § 9.9, at 92-93 (1976 Cum. Supp.), wherein it was noted that the aforementioned statute is generally applied to cases involving successive harms of the type set forth in the schedules of IC 1971, 22-3-3-10 (Burns Code Ed.), while the cases dealing with the other types of aggravation of pre-existing condition have involved unscheduled harms which are not permanent injuries.

The evidence and reasonable inferences are that appellant had sustained two previous injuries that had resulted in permanent partial impairment to the man as a whole. The Industrial Board therefore could not base its award upon a final impairment evaluation of all three incidents. *Moore* v. *Staton* (1950), 120 Ind. App. 339, 92 N.E.2d 564. Appellant failed to carry his burden of proof in demonstrating what percentage of the permanent injury pre-existed, and, thus, what percentage was caused by the accident for which compensation is sought. Without such evidence, the Board could not fulfill its duties as outlined by the statute. In light of this absence of evidence, the Board properly denied an award of compensation. The award of the Industrial Board must therefore be affirmed.

Award affirmed.

Staton, P.J., concurs in result; Garrard, J., dissents with opinion.

### Dissenting Opinion

Garrard, J.—I respectfully dissent and would reverse the determination of the Industrial Board which, in effect, holds that an employee who suffers permanent injury arising out

of and in the course of his employment may not recover for permanent impairment unless he carries the burden of establishing both his damages and any mitigation thereof. I believe this result is contrary to both the specific portion of the statute which is at issue and to the general policy which guides interpretation of the Act.

It is not disputed that on March 9, 1973, Anton suffered an injury which arose both out of and in the course of his employment. The only question relates to his claim of permanent partial impairment. Because there had been two prior injuries to Anton's lower back and there was no specific evidence as to the amount of permanent partial impairment which resulted from those injuries, the Board found Anton had failed to carry his burden of proof. It therefore denied compensation for any permanent partial impairment.

I do not dispute that Anton had the burden of proof in his claim to the Board. Thus, if the evidence was in equipoise as to *whether* Anton suffered *any* permanent impairment *from the injury* of March 9th, the Board should have found he failed to meet his burden of proof. Similarly, we would not disturb the Board's finding on a credibility determination if some evidence supported Anton and other evidence supported the inference that there was no permanent impairment from the injury in question. The Board's determination in this case cannot be sustained on either of these bases.

Dr. Papadopoulos, who testified for the claimant, stated that Anton had a permanent partial impairment of 15% after the surgery which followed the March 9th injury. He testified that *part* of the impairment was from the prior injuries but that he could not give an opinion as to how much existed prior to March 9th.

Similarly, Dr. Stark, who testified for the employer, stated that Anton had permanent impairment of 8%, that he could not break down the percentages to Anton's three separate injuries, but that "they *all* contribute to some extent."

· The only reasonable inference to be drawn from the evidence was that Anton suffered *some* permanent partial impairment from the March 9th industrial accident, but the amount of this impairment was uncertain because of the undetermined extent of his prior impairment.

Thus, the ultimate question we decide is whether an employee who establishes that he suffered a permanent partial impairment as the result of an industrial accident, but who cannot establish the percent of his impairment resulting from the accident *because* there is no evidence establishing the amount of impairment he had already sustained from a prior injury should (a) recover nothing for impairment on the ground he has failed in his burden of proof, or (b) should recover for the entire permanent partial impairment shown to exist after the industrial injury complained of.

In examining these choices it is well established that the Workmen's Compensation Act should be liberally construed to effect its humane purposes. *See, e.g., Homan* v. *Belleville Lumber and Supply Co.* (1937), 104 Ind. App. 96, 8 N.E.2d 127; *Cunya* v. *Vance* (1935), 100 Ind. App. 687, 197 N.E. 737.

The question of proceedings to secure compensation for subsequent permanent injuries is controlled by IC 1971, 22-3-3-12 (Burns Code Ed.):

"If an employee has sustained a permanent injury either in another employment, or from other cause or causes than the employment in which he received a subsequent permanent injury by accident, such as specified in section 31 [22-3-3-10], he shall be entitled to compensation for the subsequent permanent injury in the same amount as if the previous injury had not occurred: Provided, however, That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent

permanent injury, and shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury. Provided further, however, That amputation of any part of the body or loss of any or all of the vision of one or both eyes shall be considered as a permanent injury or physical condition."

Two decisions have construed the statute although neither considered which party bears the risk when the evidence is inadequate to establish the amount of disability which resulted from the prior injury or injuries.

In *Moore* v. *Staton* (1950), 120 Ind. App. 339, 92 N.E.2d 564, the court pointed out that the present form of the statute arose from a 1945 amendment and was a radical departure from prior law which provided benefits for the total existing impairment undiminished by the portion attributable to a prior injury. In its decision the court noted the duty of the Board to determine the extent of the aggravation and remanded to the Board for further findings.

Subsequently, the Supreme Court decided *Kinzie* v. *Gen. Tire & Rubber Co.* (1956), 235 Ind. 592, 134 N.E.2d 212. The case actually concerned the second proviso, and the holding was that where the evidence established that there was no increase in impairment from the second injury the employee was not entitled to permanent partial impairment.[1] The court, however, agreed with the *Moore* court, stating that the purpose of the amendment adding the provisos was to remove one of the major barriers against the employment of handicapped persons, and reiterated the duty of the Board,

"The above proviso not only authorized, it *required* that the board determine first the fact of a permanent injury and the extent thereof. It made it necessary that the board then determine whether the injury is a subsequent permanent injury. If it is determined that the injury is a subsequent injury, the board must then determine the extent

1. The employee had been industrially blind in his left eye prior to the injury for which a claim was filed. The latter injury resulted in enucleation of the eye. The case was remanded, however, for determination that the prior condition was "permanent" and that the prior "industrially blind" condition had been calculated with glasses.

of the injured person's previous 'permanent injury or physical condition.' If from these facts it is determined that the permanent injury for which compensation is claimed 'results only in an aggravation or increase of the previously sustained injury or physical condition,' then, as the statute provides, the board 'shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury.' " 235 Ind. 592, 602, 134 N.E.2d 212, 217.

Thus, while the statute is open to construction on the question before us, it should be liberally construed to effect the humane purposes of the Act. Such a construction places nonpersuasion regarding the extent of impairment which has resulted from a prior injury on the employer *once* the employee has discharged his burden by establishing a compensable injury, that permanent impairment resulted therefrom, and the total amount of existing permanent partial impairment.

I believe that construction should be adopted as the more reasonable construction because:

(1) The history of the Act demonstrates that prior to 1945 such subsequent injuries were fully compensable.[2] To alter that result the Legislature did not choose to fully rewrite the section. Instead it retained as the primary rule full compensation to which it appended an exception where the evidence established preexisting impairment from a prior injury. This approach and the Supreme Court's seriate construction of the statute in *Kinzie* do not manifest an intent contrary to the general policy of liberal construction.

(2) Considering both the general policy and the specific purpose of the section as discussed in *Kinzie* it would not appear to place an unduly harsh burden on the employer to place upon it the risk of nonpersuasion regarding the extent of preexisting impairment. It may discover medical records of a claimant's prior related injuries. Moreover, through

2. *See, e.g., Cunya* v. *Vance* (1935), 100 Ind. App. 687, 197 N.E. 737.

employment and re-employment physical examinations it has a device readily available for securing evidence of an existing impairment.

I would therefore reverse the decision of the Board with instructions to determine the permanent partial impairment of Anton consistent with this opinion.[3]

NOTE.—Reported at 363 N.E.2d 1286.

---

3. There remains for the Board's determination the extent of the permanent partial impairment following the March 9th injury since the evidence was conflicting. Due to its conclusion regarding the effect of nonpersuasion as to the extent of the preexisting impairment, the Board made no finding of the extent of the total permanent partial impairment which existed after the March 9th injury.