388 A.2d 8.

## WILLIAM J. WALSH *v.* STATE OF RHODE ISLAND DEPARTMENT OF NATURAL RESOURCES. .

JUNE 30, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.   This is an appeal from a final decree of the Workmen's Compensation Commission denying the petitioner's claim for specific compensation under G.L. 1956 (1968 Reenactment) §28-33-19(d) for loss of sight in his right eye.

The petitioner was injured on October 18, 1973, when a tow line on a boat he was operating in his capacity as a boat captain for respondent's Division of Fish and Wildlife snapped and struck him in the right eye. The petitioner received compensation benefits for the initial period of incapacity. On September 18, 1975, petitioner filed a petition seeking specific compensation for permanent loss of sight in the injured eye. At the hearing on the petition, Dr. Reid Appleby, petitioner's ophthalmologist, testified that, as a result of the October 1973 injury, petitioner's right eye developed a mature cataract, a clouding of the crystalline lens behind the pupil of the eye which effectively blocks the passage of light through the eye. In order to allow light to pass unobstructed, albeit unfocused, from the front of the eye to the back, the lens was surgically removed.

Following surgery, sight in the injured eye was below the level at which useful vision is measured. The petitioner was only able to count fingers at 4 to 5 feet distances. Doctor Appleby testified that the damage is permanent.

To restore focusing power in the damaged right eye, petitioner was fitted with a contact lens. With the lens, petitioner's vision is approximately 90 percent of that considered normal.

Doctor Appleby further testified that, while the lens corrected distance vision, petitioner would have to wear glasses in addition to the lens to effect near vision. He also noted that as a result of the accident petitioner suffered permanent and possibly progressive retinal damage at the macula.

During cross-examination, Dr. Appleby admitted that the function of contact lenses is identical to that of glasses. However, he characterized a contact lens as a prosthesis and glasses as an optical device.

The trial commissioner concluded that because contact lenses perform the same function as glasses, they are included within the meaning of the term glasses as it is used in §28-33-19(d). He held, therefore, that petitioner whose vision was correctable to 90 percent of normal with the lens had failed to prove that he had sustained a loss of vision sufficient to bring him within the ambit of §28-33-19(d). This decision was affirmed by the full commission. The petitioner filed this appeal pursuant to §28-35-29, alleging that the commission's interpretation of the term "glasses" constituted an error of law.

Section 28-33-19 is entitled "Additional compensation for specific injuries." Benefits paid thereunder are intended to compensate an injured worker for the loss of a specific member or sense rather than for the impairment of earning capacity caused by the loss. *Coletta* v. *State,* 106 R.I. 764, 771, 263 A.2d 681, 685 (1970).

Compensation is payable only when the loss is permanent and irrecoverable. Therefore, the loss is evaluated at that point at which rehabilitative procedures have been completed and functional development of the injured member or sense has reached its maximum potential. *Tirocchi* v. *United States Rubber Co.*, 101 R.I. 429, 434, 224, A.2d 387, 391 (1966). In general, artificial aids and prosthetic devices are not a determinative factor in ascertaining the extent of a specific loss. *Id.*

Section 28-33-19(d), in particular, provides that benefits are payable:

> "For the entire and irrecoverable loss of sight of either eye, or the reduction to one-tenth (1/10) or less [of] normal vision with glasses * * *."

Subsection (d) then is concerned not with loss of the eye itself or a part thereof, but with loss or reduction of sight. Thus if an employee suffers injury which results in loss of a part of the eye but suffers no loss or reduction of sight, he would not be entitled to compensation under this section. *See Lease* v. *Baker, McHenry & Welch, Inc,* 147 Ind. App. 3, 11, 258 N.E.2d 175, 180 (1970)(Hoffman, P.J., dissenting) *petition to transfer denied,* 256 Ind. 598, 271 N.E.2d 465 (1971).

Additionally, it is clear that, contrary to the general rule, the correction effected by artificial aids is a factor in determining the extent of visual impairment for purposes of subsection (d). *See Lamont* v. *Aetna Bridge Co.,* 107 R.I. 686, 691, 270 A.2d 515, 518 (1970).

The petitioner argues that the language of the statute is clear that the only artificial aid within the purview of subsection (d) is spectacles or eyeglasses. Essentially he asserts that even complete visual correction when afforded by contact lenses is ineffective to bar recovery for loss of sight.

We have said that a legislative enactment should be given what appears to be the meaning most consistent with its policy or obvious purposes. *Providence Journal Co.* v. *Mason,* 116 R.I. 614, 622, 359 A.2d 682, 686 (1976). The

obvious purpose of subsection (d) is to offer compensation in the nature of damages for irrecoverable and permanent loss or reduction to one-tenth of normal visual functioning. A loss or severe impairment of sight is neither irrecoverable nor permanent according to the terms of the statute when visual functioning can be restored with the use of glasses. It appears to us then that the restorative function of the aid used is controlling in our interpretation of the term glasses.

In the case at bar, Dr. Appleby testified that in some cases the inability to focus light caused by removal of the lens of the eye may be corrected by framed cataract lenses worn outside the eye. However, in petitioner's case the framed lenses, because they employed a 30 percent degree of magnification, produced total double vision. A single contact lens worn on the surface of the cornea of the injured eye effected correction of petitioner's visual defect without producing an intolerable level of double vision. Thus the corrective function of the framed and unframed lenses in this case is identical.

Therefore, we conclude that the term glasses as it is employed in §28-33-19(d) includes contact lenses where the lenses perform the same function as eyeglasses.

This view is supported by our decision in *Marszalkowski* v. *Rusakovich*, 84 R.I. 302, 124 A.2d 244 (1956). In that case we held that the language in §28-33-19(a) providing that "the Snellen chart reading 20/200 shall equal one-tenth (1/10) of normal vision" did not bar the use of a functional equivalent of the Snellen chart to measure visual acuity as long as the method substituted incorporated the standards of the Snellen chart. *Id.* at 309, 124 A.2d at 248.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workmen's Compensation Commission.

*Robert L. De Costa*, for petitioner.

*Julius C. Michaelson*, Attorney General, *Richard B. Wooley*, Special Assistant Attorney General, for respondent.

388 A.2d 357.

G<span>ILBERT</span> H. K<span>INGSLEY</span> *et ux. v.* J<span>OHN</span> S. M<span>ILLER</span>, *et al.*

JUNE 30, 1978.

P<span>RESENT</span>: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This is an appeal from a judgment of the Superior Court denying the plaintiffs' prayer for declaratory relief. Before discussing the merits of the plaintiffs' appeal, we must first review the unusual procedural posture of the case and our jurisdiction to consider the appeal.

In April of 1975, plaintiffs filed an application with defendant, the Building Inspector of the Town of North Kingstown, for a permit to conduct earth-removal operations on a certain parcel of land they own in the town. The application was filed pursuant to article IV, chapter 15, of the North Kingstown Revised Ordinances (1974), an ordinance regulating earth extraction and removal.[1] The defendant building inspector refused to issue the requested permit because the parcel in question is zoned "Village Residential." According to the town's zoning ordinance, earth removal in such a district is neither a permitted use nor one permitted by way of special exception.[2] The plaintiffs filed an appeal from this decision with the zoning board of review.[3] No action was ever taken by the zoning board, however, because the parties

---

[1]The town's authority to enact the earth-removal ordinance may be found in P.L. 1973, ch. 130.

[2]Earth removal is a permitted use in a "Heavy Business" district and a use allowed by special exception in a "Rural Residential" district. North Kingstown Revised Ordinances, secs. 17-4-5 and 17-2-1.

[3]Both the enabling act and the earth-removal ordinance provide that appeals from decisions of the building inspector to the zoning board of review shall be taken "in the same manner" as other appeals to the zoning board. P.L. 1973, ch 130, §8; North Kingstown Revised Ordinances §15-4-6 (1974). Neither mention the procedure for judicial review but presumably both the Legislature and the North Kingstown Town Council intended such review to be conducted "in the same

agreed to forego a hearing and decision by the board and expedite matters by seeking judicial review through the pertinent provisions of the Declaratory Judgment Act. The parties, in taking this route, assumed that the zoning board would have no discretion to act because the property was located in a "Village Residential district.[4]

In the Superior Court plaintiffs sought a declaration that any provisions of the North Kingstown Zoning Ordinance proscribing earth removal were null and void because the earth-removal ordinance superseded all provisions of the previously enacted zoning ordinance relating to earth removal, and consequently, the town was without "statutory authority" or "jurisdiction" to deny them an earth-removal permit.

While some members of this court continue to have serious reservations about instituting a declaratory judgment action after the party has begun to seek relief at the administrative level,[5] such a procedure is permissible in Rhode Island, at least insofar as the complaint seeks a declaration that the challenged ordinance or rule is facially unconstitutional or in excess of statutory powers, or that the agency or board had no jurisdiction. *Taylor* v. *Marshall,* 119 R.I. 171, 376 A.2d 712 (1977). Accordingly, plaintiffs' appeal is properly before us, notwithstanding their failure to exhaust the administrative remedies set forth in P.L. 1973, ch. 130, §8.

---

manner" as other appeals from decisions of the zoning board — that is, by writ of certiorari to this court. P.L. 1948, ch. 2079, §9. In any case, this court has issued a writ of certiorari in the exercise of its final revisory jurisdiction upon all questions of law when no other remedy has been specifically provided by statute for the review of alleged errors of law in an inferior tribunal. *City of Providence* v. *Local 799, International Ass'n of Firefighters,* 111 R.I. 586, 305 A.2d 93 (1973).

[4]This assumption may well be inconsistent with the North Kingstown special zoning enabling act. P.L. 1948, ch. 2079, §8. *See Baker* v. *Zoning Board of Review,* 82 R.I. 432, 435, 111 A.2d 353, 355 (1955).

[5]*See Taylor* v. *Marshall,* 119 R.I. 171, 177, 376 A.2d 712, 717 (1977) (Kelleher, J., dissenting).

The plaintiffs' sole contention is that the earth-removal enabling act and subsequent ordinance pre-empted the North Kingstown Zoning Ordinance. They interpret the earth-removal ordinance as *mandating* the issuance of earth-removal permits in residential areas once applicants comply with the requirements of the ordinance. In taking this position, plaintiffs give little credence to P.L. 1973, ch. 130, §15, which provides:

> "This act shall not be deemed to limit by implication or otherwise any ordinance enacted pursuant to the authority of chapter 24 of title 45 of the general laws of 1956 as amended."

Chapter 24 of title 45 is the general zoning enabling act. The fair import of this provision is that the earth-removal act in no way limits or supersedes any zoning ordinance that is enacted by virtue of ch. 24 of title 45.

The plaintiffs place great stress on the fact that North Kingstown's zoning ordinance was not enacted pursuant to the authority of the general enabling act. Rather, zoning came to North Kingstown by way of a special enabling act,[6] to wit, P.L. 1948, ch. 2079. *See Baker* v. *Zoning Board of Review*, 82 R.I. 432, 111 A.2d 353 (1955).

During the January 1973 legislative session, six other communities were permitted to enact earth-removal ordinances.[7] The enabling legislation for Portsmouth was introduced first,

---

[6]Six other Rhode Island communities have special zoning enabling acts. They are New Shoreham (P.L. 1953, ch. 3125); Johnston (P.L. 1935, ch. 2233); Narragansett (P.L. 1928, ch. 1277); South Kingstown (P.L. 1973, ch. 101); West Warwick (P.L. 1933, ch. 2065); Westerly (P.L. 1922, ch. 2299). All but New Shoreham's have been amended in one form or another since the date they were originally enacted. See P.L. 1977, Tables 2, 3.

[7]P.L. 1973, ch. 103 (Lincoln), ch. 127 (Portsmouth), ch. 161 (East Greenwich), ch. 167 (Tiverton), ch. 178 (Little Compton), ch. 190 (Exeter). None of these communities have a special zoning enabling act, but all have enacted zoning ordinances pursuant to the general enabling act.

on January 12, 1973. The other six, including that for North Kingstown, were introduced at subsequent times during the 1973 session. All of them are quite similar. All of the enabling acts have an identical section 15, except for the one drafted for Exeter, which did not enact a zoning ordinance until 4 years later, in May 1977. The fact that the earth-removal acts are practically carbon copies of each other strongly suggests that the earth-removal pattern was set by Portsmouth and followed by the other six communities. *See Whitman* v. *Mott*, 114 R.I. 530, 336 A.2d 836 (1975). What evidently happened is that the drafter, in preparing the North Kingstown enabling legislation, used the Portsmouth legislation as a guide and simply failed to substitute in section 15 reference to North Kingstown's special zoning enabling act (P.L. 1948, ch. 2079) for the general zoning enabling act (G.L. 1956 (1970 Reenactment) §45-24-1 *et seq.*)

While the judicial branch has no authority to amend or extend an act of the Legislature, a literal reading of a statute may be ignored if it does not convey a sensible meaning or where it defeats an evident legislative purpose. *Providence Journal Co.* v. *Mason*, 116 R.I. 614, 359 A.2d 682 (1976); *Pucci* v. *Algiere*, 106 R.I. 411, 261 A.2d 1 (1970). The paramount task in construing a statute is to ascertain the intent behind its enactment and to effectuate that intendment whenever it is lawful and within the competence of the Legislature. *Narragansett Racing Association, Inc.* v. *Norberg*, 112 R.I. 791, 316 A.2d 334 (1974). This court will not ascribe to the General Assembly an intent to enact legislation which is devoid of any purpose, inefficacious, or nugatory. *Town of Scituate* v. *O'Rourke*, 103 R.I. 499, 239 A.2d 176 (1968); *Ewing* v. *Frank*, 103 R.I. 96, 234 A.2d 840 (1967).

Here, the legislative purpose, though imperfectly expressed, is clear. Even if earth-removal enabling legislation might permit a municipality to adopt an ordinance which

might be considered as "quasi-zoning"[8] legislation, the General Assembly has clearly indicated that the locale of earth-removal operations is to be determined by the provisions of the town's zoning ordinance. If the zoning ordinance does not permit an earth-removal operation to take place within certain districts, any ordinance enacted under the 1973 enabling Legislation will afford no additional legislative basis for such an undertaking in those districts. The 1973 statute simply allows the town to regulate all facets of an earth-removal operation. It in no way supersedes the provisions of the zoning ordinance which specify the uses to which land in the various zoning districts can be devoted. Accordingly, the building inspector was acting within his jurisdiction when he denied the plaintiffs' request for an earth-removal permit.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Melvin Chernick,* for plaintiffs.

*Taft & McSally, Bernard F. McSally,* for defendants.