DECISION
Before this Court is the appeal of Kristina Wasserman (Plaintiff) from the decision of the Town of Glocester Zoning Board of Review (Zoning Board), granting the application of ABComm, LLC (ABComm/Defendant) and Nancy and the late Nicholas Comella (Comellas/Defendants) for a special-use permit for the construction of a telecommunications tower. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
On April 17, 2000 Defendant ABComm, constructor of telecommunications towers, and Defendants Nancy and the late Nicholas Comella, property owners of the anticipated construction site, submitted applications to the Town of Glocester Zoning Board for a special-use permit and a dimensional variance relating to the proposed construction of a wireless telecommunications tower at 1380 Putnam Pike, AP 10, Lot 41 in an A-4 zone. See Application to Zoning Board of Review for Special-Use Permit,Variance or Appeal (April 17, 2000). The proposed free-standing, lattice-style tower would reach a height of 190 feet and would function to provide wireless communication service to the western part of the region. See ABComm LLC's Appendix to Application for a Special-Use Permitand Dimensional Variance (outlining size, location and purpose of proposed tower); Application Narrative in Support of ABComm, LLC'sApplication for a Wireless Telecommunications Facility (discussing technological, economic and regulatory aspects of the proposed tower and delineating the tower's height, design, proximity to surrounding properties and other aspects of the tower). Because the Zoning Board was considering an amendment to the Town of Glocester Zoning Ordinance (Zoning Ordinance) at the time Defendant ABComm and Defendants Comella filed the applications, the Board postponed review of the applications until after the amendment's passage. See Defendants', Town of Glocester,Glocester Town Council and Glocester Zoning Board of Review Exhibit 1,Decision of the Zoning Board of Review of the Town of Glocester at 1, n. 1 (hereinafter Decision of Zoning Board).
In August 2000 and May 2001, the Zoning Board provided notice to Plaintiff of Defendants' applications by mailing letters by certified mail which described Defendants' applications for a special-use permit and a dimensional variance and informed Plaintiff of upcoming hearing dates pertaining to the applications. See Defendants', Town ofGlocester, Glocester Town Council and Glocester Zoning Board of ReviewExhibits 3, 4 (copies of letters and certified mail receipts providing notice to Plaintiff of public hearings regarding ABComm's and Comellas' applications). The Zoning Board conducted public hearings on the applications on May 24, 2001, July 26, 2001, August 7, 2001 and February 28, 2002. See Decision of Zoning Board at 1 (outlining hearing dates).
During the hearings, the Zoning Board received testimony relating to the tower by experts and engineers, as well as objections to and support of the tower by citizens of Glocester. See February 28, 2002 Transcript
at 28-41, 46-80 (testimony of expert witnesses and statements made by the public); May 24, 2001 Transcript at 16-104 (testimony of experts and citizens). Plaintiff's husband, David Wasserman, read into the record a letter composed by Plaintiff. See May 24, 2001 Transcript at 86-96. Additionally, David Wasserman presented a model demonstrating the height differences between the tower, the trees and other surrounding structures, asking the Zoning Board to consider the scale of the tower in relation to other structures. See id. at 87 (discussing model presented by David Wasserman). Other citizens voiced concerns regarding the disruption of Glocester's rural character and the tower's proximity to historical districts. See February 28, 2002 Transcript at 62-74 (citizens voicing concerns about tower's potentially detrimental impact on nearby property values and asking Zoning Board to consider alternative sites);May 24, 2001 Transcript at 101-104 (citizens stating concern over tower's impact on historic character of Glocester).[1] On February 28, 2002, the Zoning Board voted unanimously to grant Defendants' special-use permit. See February 28, 2002 Transcript at 93.
With respect to the proposed zoning amendment, the Zoning Board also notified citizens about public hearings on the matter by consecutive newspaper advertisements pursuant to Rhode Island General Laws §45-24-53. See Defendants' Town of Glocester, Glocester Town Council andGlocester Zoning Board of Review Exhibits 5, 6 (reproducing advertisements providing notice of public hearings with respect to proposed zoning amendment). On January 24, 2002, January 31, 2002 and February 4, 2002, the Providence Journal carried the advertisement, reading: "[n]otice is hereby given . . . that a Public Hearing will be held in the Town Council Chambers . . . on . . . February 7, 2002 at 7:30 P.M. The purpose of this meeting is to consider proposed amendments to the Zoning Ordinance. . . ." Id. The advertisement explained the amendment which would affect wireless telecommunications facilities. Seeid.
On February 7, 2002, the Zoning Board passed the amendment to the Zoning Ordinance, effective February 18, 2002. See Town of Glocester:Notice (stating that "[t]he Town Council and the Town of Glocester, County of Providence, State of Rhode Island hereby ORDAINS that the following AMENDMENTS to the Glocester Zoning Ordinance were ADOPTED by the Town Council February 7, 2002, EFFECTIVE February 18, 2002"). With the passage of this amendment, Defendants no longer needed a dimensional variance in order to construct the proposed tower. See Decision of ZoningBoard at 1, n. 1. Subsequently, as noted above, the Zoning Board granted Defendants' application for a special-use permit on February 28, 2002 and issued its written decision on April 11, 2002. See February 28, 2002Transcript at 93; Decision of Zoning Board at 7. The instant timely appeal followed on April 30, 2002.
 STANDARD OF REVIEW
Rhode Island General Laws § 45-24-69(d) authorizes the Superior Court to review decisions of local zoning boards. R.I.G.L. §45-24-69(d). The statute provides that:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." R.I.G.L. § 45-24-44(d).
Pursuant to this directive, "the reviewing court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 509,388 A.2d 821, 825 (1978)); see Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (holding that "[t]he trial justice, when reviewing the action of a zoning board of review, `must examine the entire record to determine whether `substantial' evidence exists to support the board's findings' ") (quoting DeStefano v. ZoningBd. of Review, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). The Rhode Island Supreme Court has defined "substantial evidence" as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981).
Additionally, it is the essential function of a zoning board to weigh the evidence presented at the hearing. See Bellevue Shopping Ctr. Assoc.v. Chase, 574 A.2d 760, 764 (R.I. 1990) (observing that "[t]he board's essential function is to weigh the evidence"). Thus, the zoning board possesses the discretion to either accept or reject any or all of the evidence. See id. (noting that "the board is vested with discretion to accept or reject the evidence presented"). As such, a court will reverse a zoning board's decision only after examination of the entire certified record and upon a finding that no substantial evidence supports the zoning board's decision. See Salve Regina College, 594 A.2d at 880 (stating that the trial court must review the entire record and find that substantial evidence supports the zoning board's findings).
 ZONING AMENDMENT
In addition to appellate review of the Zoning Board's decision, Plaintiff here seeks a declaratory judgment declaring unconstitutional and beyond the Zoning Board's authority the amendment to the Zoning Ordinance enacted on February 7, 2002.
Defendants ABComm and Comella argue that the Zoning Board's action with respect to the amendment does not warrant declaratory relief as Plaintiff was not entitled to individual written notice of the amendment. Defendants Town of Glocester, Glocester Town Council, and Glocester Zoning Board of Review urge that Plaintiff's claim regarding lack of notice of the amendment is time-barred pursuant to Rhode Island General Laws § 45-24-71.[2]
Section 9-30-1 of the Rhode Island General Laws empowers the Superior Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.I.G.L. § 9-30-1. Whether a court issues a declaratory judgment lies within the court's discretion. Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997) (stating that "[t]he decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary"); see
R.I.G.L. § 9-30-6 (providing that "[t]he court may refuse to render or enter a declaratory judgment . . . where the judgment . . ., if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding"). The declared purpose of the statute "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."
R.I.G.L. § 9-30-12.
Additionally, when a party seeks to challenge a zoning ordinance on constitutional grounds or on the basis that the zoning board lacks jurisdiction over the matter, declaratory judgment may be proper despite the fact that the party has not exhausted all administrative remedies.See Kingsley v. Miller, 120 R.I. 372, 374, 388 A.2d 357, 359 (R.I. 1978). Because a zoning board lacks the authority to rule on the validity of an ordinance, an appeal to the board challenging the ordinance on this ground would be futile. See M.B.T. Constr. Corp. v. Edwards, 528 A.2d 336, 338 (R.I. 1987). Therefore, the Rhode Island Supreme Court has held that "courts will not deny judicial relief on the ground that one invoking its protection has first failed to do that which would be futile." Id.
(quoting Frank Ansuini, Inc. v. City of Cranston, 107 R.I. 63, 73,264 A.2d 910, 915-16 (1970)). Accordingly, exhaustion of remedies is not a prerequisite to review of a challenge to an ordinance's validity. Seeid.
Section 45-24-50 of the Rhode Island General Laws enables a local legislature to amend its zoning ordinances. See R.I.G.L. § 45-24-50
(providing that "[f]or the purpose of promoting the public health, safety, morals, and general welfare, a city or town council has the power . . . to . . . amend . . . a zoning ordinance"). When amending a zoning ordinance, however, a zoning board must ensure that the amendment conforms to the comprehensive community plan and must provide notice and a hearing pursuant to Rhode Island General Laws § 45-24-53. See
R.I.G.L. § 45-24-50(b) (stating that "[a] zoning ordinance, and all amendments to it, must be consistent with the city or town's comprehensive plan"); R.I.G.L. § 45-24-53 (outlining notice and hearing requirements for zoning ordinance amendment). Subsections (a) and (b) of § 45-24-53 address notice of a proposed amendment by newspaper advertisement and provide, in relevant part:
 "(a) No zoning ordinance shall be adopted, repealed, or amended until after a public hearing has been held upon the question before the city or town council. The city or town council shall first give notice of the public hearing by publication of notice in a newspaper of general circulation within the city or town at least once each week for three (3) successive weeks prior to the date of the hearing, which may include the week in which the hearing is to be held, at which hearing opportunity shall be given to all persons interested to be heard upon the matter of the proposed ordinance. Written notice, which may be a copy of the newspaper notice, shall be mailed to . . ., where applicable, to the parties specified in subsections (b), (c), (d), and (e) of this section, at least two (2) weeks prior to the hearing. The newspaper notice shall be published as a display advertisement, using a type size at least as large as the normal type size used by the newspaper in its news articles, and shall:
 (1) Specify the place of the hearing and the date and time of its commencement; (2) Indicate that adoption, amendment, or repeal of a zoning ordinance is under consideration; (3) Contain a statement of the proposed amendments to the ordinance that may be printed once in its entirety, or summarize and describe the matter under consideration; (4) Advise those interested where and when a copy of the matter under consideration may be obtained or examined and copied; and (5) State that the proposals shown on the ordinance may be altered or amended prior to the close of the public hearing without further advertising, as a result of further study or because of the views expressed at the public hearing. Any alteration or amendment must be presented for comment in the course of the hearing.
 (b) Where a proposed general amendment to an existing zoning ordinance includes changes in an existing zoning map, public notice shall be given as required by subsection (a) of this section." R.I.G.L. § 45-24-53(a), (b).
Additionally, with respect to individualized notice, subsection (c) of § 45-24-53 requires that:
 "(c) Where a proposed amendment to an existing ordinance includes a specific change in a zoning district map, but does not affect districts generally, public notice shall be given as required by subsection (c) of this section, with the additional requirements that:
 (1) Notice shall include a map showing the existing and proposed boundaries, zoning district boundaries, and existing streets and roads and their names, and city and town boundaries where appropriate; and
 (2) Written notice of the date, time, and place of the public hearing and the nature and purpose of the hearing shall be sent to all owners of real property whose property is located in or within not less than two hundred feet (200') of the perimeter of the area proposed for change, whether within the city or town or within an adjacent city or town. The notice shall be sent by registered or certified mail to the last known address of the owners, as shown on the current real estate tax assessment records of the city or town in which the property is located." R.I.G.L. § 45-24-53(c).
Because a town council's actions are legislative in nature, an amendment to a zoning ordinance enjoys the presumption of validity. See Mesolellav. City of Providence, 439 A.2d 1370, 1373-74 (R.I. 1982) (noting that "[a]mendments to . . . zoning ordinances, like other legislative acts, are presumed valid") (citing Carpionato v. Town Council of N.Providence, 104 R.I. 490, 495, 244 A.2d 861, 863 (1968)).
In the present case, Plaintiff was not entitled to individual written notice of the proposed zoning amendment under § 45-24-53. Section45-24-53 clearly sets forth the requisite procedures for notice and a hearing when a zoning board addresses proposed amendments to a zoning ordinance. See R.I.G.L. § 45-24-53. Ascribing to the words their plain and ordinary meanings, this Court finds that the statute mandates only notice to the public by way of newspaper advertising when an amendment involves provisions such as the provision involved here. See
R.I.G.L. § 45-24-53(a), (b). No evidence in the record indicates that the amendment passed on February 7, 2002 involved "a specific change to a zoning district map," which would necessitate individual notice to abutting property owners within 200 feet. See R.I.G.L. § 45-24-53(c). Accordingly, in light of the presumptive validity of the amendment and giving the words of § 45-24-53 plain and ordinary meanings, this Court finds that Plaintiff was not entitled to individual written notice of hearings pertaining to the amendment. As such, this Court declares that the Zoning Board acted within its statutory authority, and the amendment is not unconstitutional.
a. Vested Rights and R.I.G.L. § 45-24-44
Plaintiff contends that because Defendants' applications for a special-use permit and a dimensional variance were "substantially complete" as of April 2000, the law existing at that time should control, not the February 2002 Amendment. While recognizing that Rhode Island General Laws § 45-24-44 protects applicants in cases where a regulation changes after the submission of an application, Defendants ABComm and Comella urge that § 45-24-44 does not bar an applicant's waiver of the protection afforded under the statute when the subsequent regulation becomes more favorable to the applicants.
Rhode Island General Laws § 45-24-44 creates vested rights to a party submitting an application to a zoning board. See R.I.G.L. §45-24-44. Thus, "[a] zoning ordinance provides protection for the consideration of applications for development that are substantially complete and have been submitted for approval . . . prior to enactment of the new zoning ordinance or amendment." R.I.G.L. § 45-24-44(a). Additionally, § 45-24-44(c) ensures that "[a]ny application considered by a city or town under the protection of this section shall be reviewed according to the regulations applicable in the zoning ordinance in force at the time the application was submitted." R.I.G.L. § 45-24-44(c).
Principles of statutory construction direct that courts "establish and effectuate the intent of the Legislature." Ferreira v. Integon Nat'lIns. Co., 2002 R.I. LEXIS 200, *5 (R.I. 2002) (quoting R RAssociates v. City of Providence Water Supply Board, 765 A.2d 432, 436 (R.I. 2001)). Thus, the Rhode Island Supreme Court has held that "[i]f a statutory provision is clear and unambiguous, `there is no room for statutory construction and we must apply the statute as written.' " Id.
(quoting Cummings v. Shorey, 761 A.2d 11 680, 684 (R.I. 2000)); seeMongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (noting that "when the language of a statute . . . is clear and certain, there is nothing left for interpretation and the [statute] must be interpreted literally"). Accordingly, when construing a statute, a court must "give the words . . . their plain and ordinary meanings." Ferreira, 2002 R.I. LEXIS 200 at *6 (quoting Accent Store Design, Inc. v. Marathon House,Inc., 674 A.2d 1223, 1226 (R.I. 1996)).
The dictionary defines "protection" as "preservation from injury or harm." Random House Dictionary of the English Language 1553 (2nd ed. 1987). Accordingly, the use of the word "protection" in § 45-24-44
indicates that the Legislature designed the statute to shield an applicant from changes to a regulation that would result in detrimental treatment of the application. See R.I.G.L. § 45-24-44; Roland F. Chase, Rhode Island Zoning Handbook, § 15 (2000) (interpreting the vested rights provision enunciated in § 45-24-44 as providing "protect[ion] from adverse zoning changes"). Thus, when a change to a zoning regulation occurs after the submission of an application which does not adversely impact the application, the provisions of § 45-24-44
do not apply. Furthermore, amendments to zoning ordinances effectuate the goals of a comprehensive community plan. See Curran v. Church CommunityHous. Corp., 672 A.2d 453, 455 (R.I. 1996) (validating as "justified" a zoning board's decision to grant a special exception pursuant to a comprehensive community plan, rather than the "outdated" ordinance as yet unamended pursuant to such plan). Accordingly, in the present case, because the February 2002 amendment did not affect Defendants' applications adversely, but in fact benefited Defendants and was passed pursuant to Glocester's Comprehensive Community Plan, the law in existence at the time of the April 2000 application does not control.
 ZONING BOARD'S DECISION TO GRANT DEFENDANT ABCOMM'S AND DEFENDANTS COMELLAS' SPECIAL-USE PERMIT
Plaintiff contends that the Zoning Board's decision to grant the special-use permit applications of Defendant ABComm and Defendants Comella did not conform to the purposes of the Zoning Ordinance and the Comprehensive Community Plan, that the decision exceeded the Zoning Board's authority, and that the decision prejudiced Plaintiff's substantial rights and was erroneous in light of the probative, reliable and substantial evidence of record. Defendants ABComm and Comella argue that the Zoning Board acted within its authority in granting Defendants' special-use permit for construction of the tower, that the decision did not prejudice Plaintiff's substantial rights and that the Zoning Board based its findings and decision on substantial evidence presented at the hearing. Defendants Town of Glocester, Glocester Town Council and Glocester Zoning Board of Review assert that substantial evidence exists to support the Zoning Board's decision with respect to the special-use permit application.
Both Rhode Island General Laws § 45-24-42(a) and the Zoning Ordinance give the Zoning Board the authority to grant special-use permits. See R.I.G.L. § 45-24-42(a) (stating that "[a] zoning ordinance shall provide for the issuance of special-use permits approved by the zoning board of review"); Town of Glocester Zoning Ordinance,
Art. 1, § 1-8(3)(1)(d), "Powers and Duties" at 30 (providing that "[t]he board shall have the power . . . [t]o authorize, upon application, in specific cases, special-use permits, pursuant to Title 45, Chapter 24-42(A) of the Rhode Island General Laws, where the board is designated as a permit authority for special-use permits"). Additionally, pursuant to Article 1, § 1-8(6)(5) of the Zoning Ordinance, when granting a special-use permit, the Zoning Board must:
 "affirmatively determine and enter into the record of the public hearing that the proposed use shall: (a) Be compatible with surrounding land uses; (b) Conform with the applicable elements of the Glocester comprehensive community plan; (c) Be in harmony with the general purposes and intent of this ordinance; (d) That the public convenience and welfare will be substantially served; and (e) Not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community." Town of Glocester Zoning Ordinance, Art. 1, § 1-8(6)(5).
Further, the Rhode Island Supreme Court has held that an applicant for a special use permit must demonstrate that the "proposed use will not be inimical to the public health, safety, morals, and welfare." Salve ReginaCollege, 594 A.2d at 880.
In granting Defendants' application for the special-use permit, the Zoning Board expressly found that "the proposed tower site best serves the needs of connectivity and services for the public convenience and welfare of the Town's citizens." Decision of Zoning Board at 6. Additionally, the Zoning Board noted that granting the permit for the site complied with the Glocester Comprehensive Community Plan and concluded that granting the permit was "in harmony with the general purpose and intent of the Zoning Ordinance by minimizing the visual impact on the community." Id. Further, the Zoning Board found that "this site enhances the ability of EMS, fire and police services . . . [and] . . . will not result in or create conditions that would be inimical to the public health, safety, morals or general welfare of the community." Id.
Numerous experts testified during the hearings about the effects of the tower's construction on the community and its citizens. See February 28,2002 Transcript at 41-45 (testimony of Nathan Godfrey, expert in assessing property values); May 24, 2001 Transcript at 10-86 (testimony of expert witnesses). Witnesses also discussed alternative sites and different methods of construction and explained why the proposed site best served the needs of the community. See February 28, 2002 Transcript
at 36-37; May 24, 2001 Transcript at 17-20, 28-29. One witness explained why construction of a flagpole instead of lattice tower to disguise antennas did not exist as a viable option. See February 28, 2002Transcript at 36-37. Additionally, a witness characterized the Comella property as "the best viable place" to build tower. See May 24, 2001Transcript at 17-20, 28-29.
Jeffrey Gold, a partner in ABComm, LLC who had previously been involved in the construction of hundreds of towers, testified that he selected the Comella property to house the tower because it would fill the gap in service in the western part of the region and coordinate well with existing towers in Glocester. See May 24, 2001 Transcript at 19-20, 23-24, 27. Additionally, Gold testified that the setback of the property, more than 1200 feet back from Putnam Pike, and the heavy forestation of the location made this site desirable because it minimized the tower's visual impact on the community as a whole. Id. at 28. He asserted that "after the extensive research . . . this was the most out-of-sight place that it could possibly go in that area." Id. Further, Gold asserted that the lattice style of the tower would help to camouflage the tower and testified that the hilly terrain in Glocester necessitated the 190-foot height of the tower. See February 28, 2002Transcript at 32-37.
J. Nathan Godfrey and George F. Valentine, accepted as experts on real estate appraisal, both testified in support of the tower and submitted a joint report outlining that the tower would not have a negative impact on the general character of the surrounding area. See February 28, 2002Transcript at 42, 44; May 24, 2001 Transcript at 68-69. The two concluded that the tower would not adversely impact or diminish surrounding residential property values. See February 28, 2002 Transcript at 44; May24, 2001 Transcript at 71, 77, 81. As Godfrey asserted, "[h]aving . . . visited the site, I can find no reason why this would have an inappropriate or adverse impact on surrounding properties or any property." February 28, 2002 Transcript at 44. Similarly, Valentine noted that "there would be no diminution in property values." May 24, 2001Transcript at 71, 77, 81. Additionally, the joint consulting report of Godfrey and Valentine indicated that the proposed site met all requirements set forth by Glocester's Zoning Ordinance. See ConsultingReport for Property Located at 1380 Putnam Pike, Chepachet, RI 02814
(Exhibit B) at 10-12.
Valentine also noted that the 1250-foot setback and the 80-foot canopy of trees rendered the Comella property site more desirable than other sites and concluded that "from a land-use perspective, it appears to be a well-suited site." May 24, 2001 Transcript at 70-71. Additionally, Valentine testified that the tower would have no impact on Glocester's historic district and that the color, style and design of the tower would minimize the tower's visual impact. See id. at 73.
With respect to the safety of the tower, Donald H. Haes, a radiation and radio frequency generation expert, testified that the tower would not pose a health hazard to Glocester citizens. See id. at 55, 57. Haes stated that any radiation emitted from the tower operating at full force would fall well below the permitted federal standard for human exposure to radiation. See id. at 57. As he asserted, "if this facility were to be built and operated at its maximum capacity, nobody would be exposed to any energy greater than 1/300th of the [federal] standard." Id. Further, George Geisser, a civil engineer and expert in the field, noted that the tower's design ensured that it would withstand 90-mile per hour winds, and that if the tower collapsed, it would fall safely within a 50-foot radius. May 24, 2001 Transcript at 61, 62, 64-65 (describing how tower would collapse). Finally, George F. Valentine offered his opinion that granting the special-use permit would not result in conditions that are inimical to public health, safety and welfare. See id. at 75.
After a full review of the entire record, this Court finds that substantial evidence exists to support the Zoning Board's findings and decision to grant Defendants' application for a special-use permit for construction of the tower. The Zoning Board had before it substantial evidence that the proposed tower is compatible with the surrounding land uses and conforms to the Glocester Comprehensive Community Plan. Additionally, the evidence of record indicates that tower is in harmony with the general purposes and intent of the Zoning Ordinance, substantially serves the public convenience and is not inimical to the public health, safety or welfare.
 CONCLUSION
After a careful review of the entire record, this Court finds that the Zoning Board's decision to grant the application for a special-use permit of Defendants ABComm and Comella did not violate statutory and ordinance provisions, and was not in excess of the Zoning Board's authority or affected by error of law. Additionally, the Zoning Board's decision was not erroneous in view of the reliable, probative and substantial evidence and it did not prejudice Plaintiff's substantial rights. Accordingly, this Court affirms the Zoning Board's decision.
Counsel shall prepare appropriate order for entry.
[1] The Zoning Board also heard statements by citizens in support of the tower's construction. See February 28, 2002 Transcript at 54-61, 77-80 (statements of Harmony Fire Department Chief Stuart Pearson and Thomas Comella supporting the construction of the tower).
[2] Any challenge to the amendment pursuant to § 45-24-71 is time-barred as Plaintiff did not file a complaint with the Superior Court within 30 days after the amendment became effective. See R.I.G.L. §45-24-71(a) (providing that "[a]n appeal of . . . an amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint within thirty (30) days after the enactment or amendment has become effective"); Townof Glocester: Notice (stating that "[t]he Town Council and the Town of Glocester, County of Providence, State of Rhode Island hereby ORDAINS that the following AMENDMENTS to the Glocester Zoning Ordinance were ADOPTED by the Town Council February 7, 2002, EFFECTIVE February 18, 2002); Plaintiff's Zoning Appeal/Complaint for Declaratory Judgment
(dated April 30, 2002).