David ARNOLD et al.

v.

Ronald LEBEL, in his capacity as acting director of the Rhode Island Department of Human Services.

No. 2006–254–Appeal.

Supreme Court of Rhode Island.

Dec. 24, 2007.

Gretchen Bath, Esq., Providence, for Plaintiff.

Jacqueline G. Kelley, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

In this declaratory-judgment action, the defendant, Ronald Lebel, in his capacity as acting director of the Rhode Island Department of Human Services (DHS), appeals from an order granting declaratory relief to the plaintiffs, David Arnold and Pauline Belanger (plaintiffs). In addition, Arnold cross-appeals from a portion of the judgment allowing certain DHS staff members to be present at DHS hearings. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The plaintiffs in this case applied to DHS for medical assistance in 2005, alleging that they were disabled adults. "Rhode Island's medical assistance program, commonly known as Medicaid, is designed to assist low income persons with the cost of medical care." *Esposito v. O'Hair*, 886 A.2d 1197, 1201–02 (R.I.2005) (citing G.L.1956 § 40–8–1). Permanently and totally disabled adults are among those who are eligible for the program's medical assistance. *Id.* at 1202.

Under the federally mandated Medicaid system, DHS is required to maintain a Medical Assistance Review Team (MART), which consists of a team of professionals responsible for determining whether an applicant qualifies as permanently and to-tally disabled so as to be qualified to receive Medicaid benefits. 42 C.F.R. § 435.541(f) (2006). In this case, the MART determined that plaintiffs were not disabled and therefore were ineligible for medical assistance under Medicaid. Both plaintiffs challenged the MART's determination through an administrative hearing held before a DHS hearing officer. *See* DHS Reg. § 0110.25. After notifying DHS of their intention to challenge the MART's decision, plaintiffs were notified that their grievances would be heard in late November 2005.

Before such a hearing commenced, however, on November 9, 2005, plaintiffs filed the instant action in Superior Court, requesting injunctive and declaratory relief. In their complaint, plaintiffs asserted that it was DHS's policy and the practice of DHS hearing officers to engage in *ex parte* off-the-record communications about cases currently before the hearing officer. The plaintiffs sought to enjoin this activity.

A hearing was held in the Superior Court on November 22, 2005, during which plaintiffs introduced several letters and evidence of some comments made by a DHS hearing officer in an unrelated hearing to support their allegations that *ex parte* communications were common practice. DHS countered that such communications were only occasional, but that they did not violate the agency's rules or Rhode Island's Administrative Procedures Act (APA), G.L.1956 chapter 35 of title 42. The trial justice issued a temporary restraining order enjoining DHS hearing officers from consulting with other DHS personnel on specific matters before them "without giving appropriate notice to the applicant" and an opportunity for the applicant to cross-examine any such personnel.

On January 26, 2006, a Superior Court hearing was held on the merits of the declaratory-judgment action. The trial justice proceeded under Rule 65 of the Superior Court Rules of Civil Procedure and treated the proceedings as a final hearing on the merits. The defendant offered a single witness, Charles Rosenblum, who then was the most senior hearing officer at DHS. Rosenblum testified that he never personally had *ex parte* communications with any members of the MART, or anyone else, concerning the particular details of cases he was hearing. He did, however, testify that he would consult with other agency members about specific agency policies and that he discussed factual information about medical conditions with agency professionals. In addition, Rosenblum testified that he occasionally consulted medical reference books and the Internet. The DHS argued that this type of off-the-record communication is acceptable, as long as no specific information about the case is disclosed.

The trial justice issued a bench ruling, holding that, when read *in pari materia* with the rest of the APA, § 42–35–13 must be interpreted to allow *ex parte* communications between hearing officers and DHS staff *only* concerning "general or global concern[s] they have about the discharge of their duties." He said, however, that § 42–35–13 does not allow *ex parte* communication with other staff about contested facts and opinions "involving a specific identifiable applicant" with a pending appeal. To that end, he ruled that any information gathered from outside sources must be of the type proper for judicial notice; he added that any professionals consulted on a case, inside or outside the agency, must be disclosed and made available to the parties for cross-examination.

A final declaratory order was issued on June 30, 2006, the form of which the parties agreed upon. That order clarified the bench decision by making it clear that DHS hearing officers can always consult the DHS policy manual and Social Security Income (SSI) regulations "on-line or otherwise." In addition, the order made it clear that § 42–35–9(d) requires "all evidence received or considered to be of record." The final order having been issued, DHS timely appealed to this Court. Arnold timely cross-appealed to preserve his initial due process claim "in the event [that] this Court adopts DHS'[s] interpretation of § 42–35–13(a)."

## II

### Analysis

DHS appeals from the Superior Court's ruling on several grounds. First, DHS argues that plaintiffs had not exhausted their administrative remedies when they filed for declaratory relief and that, therefore, the case was not properly before the Superior Court. Second, DHS asserts that plaintiffs' claims were moot at the time of the Superior Court hearing. Finally, DHS argues that even if plaintiffs' declaratory action properly was before the Superior Court, the trial justice misinterpreted the APA, overlooked material facts, exceeded his authority, and thereby abused his discretion.

 Rhode Island's Uniform Declaratory Judgments Act (UDJA), G.L.1956 chapter 30 of title 9, gives the Superior Court broad discretion to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9–30–1. When exercised, the decision to grant declaratory relief should remain undisturbed unless the court improperly exercised its discretion, misinterpreted the law, overlooked material facts, or exceeded its authority. *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.

1997). In addition, this Court reviews questions of statutory construction *de novo.* *Marques v. Pawtucket Mutual Insurance Co.,* 915 A.2d 745, 747 (R.I.2007).

## A

### Exhaustion

Initially, DHS challenges the trial justice's decision to take jurisdiction under the UDJA, asserting that plaintiffs failed to exhaust their administrative remedies. Because DHS did not raise this issue in the court below, it has waived its right to raise this issue on appeal under this jurisdiction's well-established raise-or-waive rule. *State v. Merced,* 933 A.2d 172, 174 (R.I.2007) ("[A]llegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level.") (quoting *State v. Toole,* 640 A.2d 965, 973 (R.I.1994)). However, even if plaintiffs had properly raised this argument below, it is without merit.

"It is well settled that a plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." *Rhode Island Employment Security Alliance, Local 401, S.E.I.U. v. State Department of Employment and Training,* 788 A.2d 465, 467 (R.I.2002) (citing *Burns v. Sundlun,* 617 A.2d 114, 116 (R.I.1992)). However, "[t]his Court has made exceptions when the exhaustion of administrative remedies would be futile." *Id.* (citing *M.B.T. Construction Corp. v. Edwards,* 528 A.2d 336, 338 (R.I.1987)); *see also* § 42–35–15 ("Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy."). This is especially true when a party "seeks a declaration that the challenged ordinance or rule is facially unconstitutional or in excess of statutory powers." *Kingsley v. Miller,* 120 R.I. 372, 374, 388 A.2d 357, 359 (1978) (citing *Taylor v. Marshall,* 119 R.I. 171, 179, 376 A.2d 712, 716 (1977)).

At the time plaintiffs filed their complaint in Superior Court, they were awaiting a hearing before a DHS hearing officer on the MART's initial denial of medical assistance. However, letters from the DHS assistant director and testimony from a DHS hearing officer in another case made plaintiffs aware that DHS allowed hearing officers to consult resources off the record. Hearing officers were permitted to consult Internet resources and to confer with DHS physicians. Although DHS asserted at oral argument that such communications are rare, this alleged fact does not detract from plaintiffs' right to seek a declaration that this occasional practice exceeds the agency's authority under the APA. *See Kingsley,* 120 R.I. at 374, 388 A.2d at 359.

We conclude that defendant waived its exhaustion argument by failing to raise it below. Even if it were properly before this Court, its argument is without merit.

## B

### Mootness

Next, DHS argues that the issue of *ex parte* communication was moot at the time of the Superior Court hearing. As was the case with its exhaustion argument, DHS also failed to raise this contention at the hearing below, and it thus has waived its right to make this argument on appeal. *See Merced,* 933 A.2d at 174. However, even if DHS had raised this contention before the Superior Court, it is without merit.

"As a general rule we only consider cases involving issues in dispute; we shall not address moot, abstract, academic,

or hypothetical questions." *Morris v. D'Amario,* 416 A.2d 137, 139 (R.I.1980). There is an exception, however, for "questions of extreme public importance, which are capable of repetition but which evade review." *Id.* This is precisely such a case.

■ DHS has continually maintained its right to engage in *ex parte* communication with DHS hearing officers and to consult outside resources without giving applicants an opportunity to challenge the information and sources on the record. During oral argument, counsel for DHS again asserted the right of DHS hearing officers to engage in *ex parte* communication with any staff members, including members of the MART. Such a policy, regardless of how infrequently it may be invoked, is a question "of extreme public importance, which [is] capable of repetition but which evade[s] review." *Morris,* 416 A.2d at 139.

In light of the foregoing, we conclude that the Superior Court properly exercised jurisdiction under the UDJA.

## C

### The Trial Justice's Interpretation of § 42–35–13

Finally, DHS argues that the trial justice misinterpreted certain provisions of the APA when he prohibited DHS hearing officers "from engaging in *ex parte* communication with anyone, whether inside or outside the agency, about facts or opinions of an applicant's pending case" and required that applicants receive notice and an opportunity to challenge all sources of evidence received or considered. The trial justice arrived at his interpretation by considering three provisions of the APA *in pari materia:* (1) the provision limiting *ex parte* communications, § 42–35–13; (2) the provision authorizing official notice of judicially cognizable facts, § 42–35–10; and (3)

the provision requiring that findings be based exclusively on the evidence and matters officially noticed, § 42–35–9(g).

■ This Court analyzes the APA provisions in question *de novo* and "in a manner that attempts to harmonize them and that is consistent with their general objective scope." *State v. Badessa,* 869 A.2d 61, 67 (R.I.2005) (quoting *State v. Dearmas,* 841 A.2d 659, 666 (R.I.2004)). DHS correctly notes that "[w]hen the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." *State v. Menard,* 888 A.2d 57, 60 (R.I.2005) (quoting *Gem Plumbing & Heating Co. v. Rossi,* 867 A.2d 796, 811 (R.I.2005)). However, it is "our ultimate goal * * * to give effect to the General Assembly's intent." *Martone v. Johnston School Committee,* 824 A.2d 426, 431 (R.I.2003). When language of a statute can be given more than one interpretation, "legislative intent must be gathered from the entire statute and not from an isolated provision." *State v. Caprio,* 477 A.2d 67, 70 (R.I.1984).

■ In this case, it is our opinion that the *ex parte* consultation provision, when read with the statute as a whole, does not have as broad a meaning as DHS suggests. *See* § 42–35–13. Initially, the statute requires that hearing officers "shall not, directly or indirectly, in connection with any issue of fact, communicate with any person or party, nor, in connection with any issue of law, with any party or his or her representative, except upon notice and opportunity for all parties to participate * * *." *Id.* This blanket prohibition is followed by the exception that "any agency member * * * [m]ay communicate with other members of the agency." *Id.* The scope of communication allowed under this provision is not clear on the face of the statute.

For instance, the parties agree that a hearing officer is limited in the amount and kind of communication he may have with members of his own agency. Even DHS admits that the hearing officer could not communicate with a member of the MART about specific facts concerning the eligibility of a specific applicant.[1] In determining what "communication" is allowed by § 42–35–13, the trial justice appropriately looked to the statutory landscape of the APA and found guidance in the surrounding provisions. *See Caprio,* 477 A.2d at 70.

A quick overview of several surrounding provisions governing the conduct of hearing officers in contested cases supports the trial justice's interpretation. For instance, § 42–35–10(4) authorizes a hearing officer to take notice of "judicially cognizable facts" and "generally recognized technical or scientific facts within the agency's specialized knowledge," but only if the parties are "notified either before or during the hearing * * * of the material noticed" and are afforded "an opportunity to contest the material so noticed."

The hearing officer's authority is further limited by § 42–35–9(g), which requires that findings of fact be "based exclusively on the evidence and matters officially noticed." Finally, § 42–35–9(e)(7) specifically designates "staff memoranda or data" as evidence requiring notice to the applicant.

DHS argues for a broad interpretation of § 42–35–13, which DHS admitted in its written and oral submissions to this Court, would allow *ex parte* communication with any agency staff member except those directly involved in the initial disability determination. This interpretation simply cannot be harmonized with the other provisions of the APA. The trial justice appropriately read the above provisions of

the APA *in pari materia* to arrive at his interpretation that the statute allowed for discussion of "general matters," but otherwise prohibited *ex parte* communication.

We therefore conclude that the APA statutory scheme, when viewed in its entirety, supports the trial justice's interpretation of the *ex parte* provision of that scheme.

## D

### *Ex Parte* Prohibition under the APA

In affirming the trial justice's judgment, we pause to make clear precisely what the APA allows and prohibits in terms of *ex parte* communications during the administrative adjudication of contested cases. Section 42–35–1(3) (" '*Contested case*' means a proceeding * * * in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing.").

█ First, § 42–35–13 of the APA prohibits *ex parte* communication with anyone about contested or material adjudicatory facts or opinions concerning the merits of an applicant's pending appeal. The function of this requirement is to prevent litigious facts from reaching the decisionmaker off the record in an administrative hearing. *See Martone v. Lensink,* 207 Conn. 296, 541 A.2d 488, 492 (1988) (stating that the purpose of the *ex parte* provision in the Connecticut APA is "to preclude litigious facts reaching the deciding minds without getting into the record.") (quoting *Model State Administrative Procedure Act,* 15 U.L.A. § 13 at 426 comment (1981)). Administrative agencies retain broad enforcement discretion and, as always, considerable deference is accorded to such agencies about how to enforce

---

1. Counsel for DHS conceded this much at oral argument.

regulations. *See Pawtucket Power Associates v. City of Pawtucket*, 622 A.2d 452, 456 (R.I.1993) ("[I]t is also a well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency."); *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977) ("Ordinarily * * * a reviewing court may not substitute its own judgment for factual determinations made by an administrative agency.").

Second, § 42–35–13 authorizes hearing officers to engage in *ex parte* communication with agency staff members about general matters pertaining to the discharge of his or her duties. General matters would include "private communications concerning procedure or timing." 1 Richard J. Pierce, *Administrative Law Treatise*, § 8.4 at 544 (4th ed.2002).

Third, in accordance with § 42–35–9(e) and § 42–35–10(4), the hearing officer must provide notice to the parties before a hearing if he or she intends to consult any documentary source or person concerning facts or opinions about the merits of an appeal. In addition, the parties must be afforded an opportunity to contest any such evidence and to cross-examine any people consulted. This is similar to the regulations followed by many federal agencies. *See, e.g.,* 45 C.F.R. § 16.17 at 79 (2006) (setting forth a regulation of the Department of Health and Human Services that states: "[b]oard members and staff shall not consider any information outside the record * * * about matters involved in an appeal").

Finally, all evidence that is received or considered must be on the record. This basic requirement, which facilitates judicial review, is consistent with current DHS regulations.[2] DHS Reg. § 0110.55.05 ("The appeals officer will not review any information that is not made available to the individual or his/her authorized representative(s)."); *see also* DHS Reg. § 0110.60.05 ("The hearing responsibility cannot be considered discharged until * * * [a] decision based *exclusively* on evidence and other material introduced at the hearing has been rendered." (Emphasis added.)); *see* 6 Jacob A. Stein et al., *Administrative Law Treatise*, § 53.04[2] (2007).

■ Thus, we read the order as follows. Unless the parties are given notice and an opportunity to respond on the record, including cross-examination, if appropriate, a DHS hearing officer may not communicate with anyone, including DHS staff members, about contested adjudicatory facts—including, but not limited to, test results, specific diagnostic information, opinions concerning the severity of an applicant's medical conditions, or overall assessment of a client's disabilities or disability status. All facts and opinions, including opinions of agency professionals and staff, as well as information obtained from an outside source, such as medical texts or the Internet, must be included on the record if the hearing officer plans to base his final decision on such facts. In short, no litigious facts should reach the decision-maker off the record in an administrative hearing.

■ However, a DHS hearing officer may communicate with agency staff members about hearing schedules, procedural matters, and general information about how hearings are conducted at DHS. Additionally, as long as a DHS hearing officer

---

**2.** An agency is bound, of course, by its own regulations. *See, e.g., Ratcliffe v. Coastal Resources Management Council,* 584 A.2d 1107, 1110 (R.I.1991).

does not discuss the contested facts of a particular case, he or she may discuss general policy concerns about the agency's function and goals; he or she may attend staff meetings and may participate in casual discussions about agency policies. A hearing officer always is permitted to consult state and federal regulations and written policies. In other words, DHS hearing officers are required to guard against the inherent unfairness of secret evidence, but they are not required to isolate themselves from the agency.

## E

### Arnold's Cross–Appeal

 In addition to DHS's appeal from the judgment, Arnold cross-appeals, contending that the Superior Court's ruling "leaves open the possibility that members of the MART could serve as medical advisor to the hearing officer, or fact-finder, at [the] hearing and on the record." Arnold argues that such a practice violates the constitutional separation of functions requirement that this Court articulated in *Davis v. Wood,* 427 A.2d 332, 337 (R.I. 1981).

The rule in *Davis* applied to a case in which "the *same individual* who investigates and prosecutes a case before an administrative agency then becomes a factfinder in the same proceeding * * *." *Davis,* 427 A.2d at 337. This rule is inapposite to the case at bar. As our discussion above makes clear, members of the MART may not be consulted off the record about the merits of an applicant's pending case. However, the mere presence of a MART member at a hearing does not convert that individual into a fact-finder. The hearing officer is the fact-finder, and as

long as the parties are allowed to cross-examine any MART member who is providing information at a hearing, a hearing officer's decision to consider such information is well within his or her discretion. We therefore conclude that Arnold's cross-appeal is without merit.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court as articulated here.[3] The record shall be remanded to the Superior Court.

---

**3.** This Court expresses its appreciation for the brief submitted by *amici curiae,* Rhode Island Disability Law Center and Professor Peter

Margulies, Esq., which was helpful to the Court.